# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**ABRAHAM PÉREZ, et al.,**

                                Plaintiffs,

                -against-

**LA ABUNDANCIA BAKERY &**
**RESTAURANT INC., et al.,**

                                Defendants.
-------------------------------------------------------x

**MEMORANDUM**
**AND ORDER**

**17-CV-0656 (RLM)**

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

Plaintiffs Abraham Pérez, Mardo Queho Perez Mendoza and Belen Solano ("plaintiffs")

bring this putative collective action against defendants La Abundancia Bakery & Restaurant

Inc., 63-12 La Abundancia Inc., 75-02 La Abundancia Bakery and Restaurant Corp., 81-16 La

Abundancia Inc., 37-01 La Abundancia Inc., 94-19 La Abundancia Inc., 88-26 La Abundancia

Inc., and Rubén Rojas (collectively, "defendants"), asserting claims under the Fair Labor

Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL"),

for unpaid overtime and minimum wages.   Currently pending before this Court is plaintiffs'

motion for court-supervised notice to putative collective action members, pursuant to 29

U.S.C. § 216(b), and for disclosure of identifying information of potential collective action

members.   See Motion to Certify FLSA Collective Action (June 2, 2017) ("Pl. Motion"),

Electronic Case Filing Docket Entry ("DE") #35.   For the reasons set forth below, the Court

grants in part the application for court-supervised notice, authorizing (in the form approved

herein) notice to employees, or former employees, who worked as waiters, bussers, prep

cooks, dishwashers or kitchen workers between February 5, 2014 and May 2015, for certain restaurants of defendants.

## BACKGROUND

Plaintiffs allege that individual defendant Rubén Rojas owns and controls six restaurants located in Queens, New York, all of which are named "La Abundancia Restaurant & Bakery." See Complaint (Feb. 5, 2017) ("Compl.") ¶ 83, DE #1.   As set forth on the website laabundanciabakery.com, the parties refer to: the restaurant located at 63-10 Broadway Avenue, Woodside, NY, as La Abundancia #1; the restaurant located at 75-02 Roosevelt Avenue, Jackson Heights, NY, as La Abundancia #2; the restaurant located at 81-16 Roosevelt Avenue, Jackson Heights, NY, as La Abundancia #3; the restaurant located at 37-01 Junction Boulevard, Corona, NY, as La Abundancia #4; the restaurant located at 94-19 Roosevelt Avenue, Jackson Heights, NY, as La Abundancia #5; and the restaurant located at 88-26 37th Avenue, Jackson Heights, NY, as La Abundancia #6.   See id. ¶ 86; Website Pages (attached as Ex. B to Reply to Response to Motion (June 23, 2017) ("Pl. Reply"), DE #44), DE #44-2.

Plaintiffs allege that they are current or former restaurant workers employed by defendants, which had a policy and pattern of failing to pay minimum wage for all hours worked up to 40 hours per workweek and failing to pay an overtime premium of one and one-half the employee's hourly rate for all hours worked beyond 40 hours per workweek.   See Compl. ¶¶ 71, 72, 74.   Plaintiffs further allege that defendants did not have a system in place to track their employees' hours and failed to provide plaintiffs with accurate wage statements. See id. ¶¶ 10, 16, 22, 87, 97; see also Declaration of Abraham Pérez (June 2, 2017) ("Pérez Decl.") ¶ 6, DE #38; Declaration of Isabel Ocampo (attached as Ex. C to Declaration of Jacob

2

Aronauer (June 2, 2017) ("Aronauer Decl."), DE #37) ("Ocampo Decl.") ¶ 12; Declaration of

Juan David Serna (attached as Ex. C to Aronauer Decl.) ("Serna Decl.") ¶ 9; Declaration of

Jasmin Vargas Tavares (attached as Ex. C to Aronauer Decl.) ("Tavares Decl.") ¶ 11.

According to the complaint, each of defendants' restaurants employs approximately 10

waiters, 2 bussers, 2 prep cooks and 2 dishwashers.   See Compl. ¶ 69.   Each waiter was

assigned to eight-hour shifts; however, each shift lasted approximately half an hour longer

because, at the end of the eight-hour shift, the waiters were required to clean the area to which

they were assigned and to provide an accounting of the customers they served.   See id. ¶ 90.

Waiters were usually assigned to work five or six days per week and were sometimes required

to work two eight-hour shifts in one day.   See id. ¶ 92.   Throughout the course of their

employment, waiters were typically assigned to work at more than one of the La Abundancia

restaurants.   See id. ¶ 93.   Waiters were paid $55 to $65 per shift regardless of how many

hours they worked per week and were not paid time and one-half for overtime work.   See id.

¶¶ 94-96.

Bussers, prep cooks, dishwashers and kitchen workers were likewise assigned to work

eight-hour shifts, five or six days per week.   See id. ¶¶ 99, 101.   These employees were

assigned to perform a variety of duties interchangeably.   For example, a "busser" might be

assigned to work in the kitchen as a prep cook.   See id. ¶ 98.   These employees were paid a

weekly salary and would not receive time and one-half for all overtime hours.   See id.

¶¶ 102-03.   However, starting in May 2015, after an earlier FLSA action against defendants

was filed by other employees in early March 2015, see Ocampo v. La Abundancia Bakery,

3

Inc., 15-cv-1134 (PK) (the "Ocampo action"), defendants stopped requiring plaintiffs to work more than 40 hours per week.   See Compl. ¶¶ 111-12, 120-21, 130.

In the complaint, plaintiff Mendoza alleges that he worked for defendants from August 2011 through December 2016 as a dishwasher and cook at La Abundancia #2.   See Compl. ¶¶ 13, 14, 113.   He worked one eight-hour shift per day and was paid in cash.   See id. ¶¶ 114, 116.   He further alleges that he frequently was required to work more than forty hours per week but was not compensated for the overtime he worked.   See id. ¶ 119.

Plaintiff Solano alleges that she worked as a waitress and cashier at La Abundancia #1 and La Abundancia #2 from April 2008 until August 28, 2016, although she was on maternity leave from approximately August 2014 through May 2015.   See id. ¶¶ 19, 20, 122.   Solano worked one eight-hour shift per day and was paid in cash.   See id. 123, 125.   Solano further alleges that she was not compensated for overtime hours worked from 2008 through July 2014 and was denied minimum wages from June 2015 through August 28, 2016.   See id. ¶¶ 128, 129.

In support of the instant motion, plaintiff Pérez has submitted a declaration describing his employment with defendants.   Pérez has worked as a dishwasher and cook at La Abundancia #2 from July 2011 through the present.   See Pérez Decl. ¶ 1; see also Compl. ¶¶ 8, 104.   Pérez generally worked one eight-hour shift per day, six days per week, from 2011 until May 2015.   See Pérez Decl. ¶¶ 3, 5; see also Compl. ¶¶ 105, 112.   Pérez worked more than 40 hours each week during that period, but was not paid for any hours worked in excess of 40 hours per week.   See Pérez Decl. ¶ 8; see also Compl. ¶ 110.   Pérez asserts

4

that "[m]any other employees at La Abundancia locations . . . complained about their wages and also not being paid overtime."   See Pérez Decl. ¶ 10.   Pérez specifically identifies his wife, Isabel Ocampo, who worked as a waitress at La Abundancia #2 and La Abundancia #3; his brother, plaintiff Mendoza, who worked as a dishwasher and cook at La Abundancia #2; and plaintiff Solano, who worked as a waitress and cashier at La Abundancia #1, as those who complained to him that they were not paid for any hours worked in excess of 40 per week. See id. ¶ 11.

Plaintiffs have additionally submitted the declaration of Ms. Ocampo, which was previously filed in the Ocampo action, by the same plaintiffs' counsel.   Ms. Ocampo worked as a waitress at La Abundancia #2 and La Abundancia #3 from August 2011 until January 2015.   See Ocampo Decl. ¶¶ 5, 6.   On average, Ms. Ocampo worked one eight-hour shift, six days per week, and was paid $55 for each shift.   See id. ¶¶ 9, 13, 24.   At the end of each shift, Ms. Ocampo was required to account for the money she collected during the shift and to clean her tables, which took approximately half an hour.   See id. ¶ 10.   On some occasions, Ms. Ocampo was assigned to work two shifts in one day.   See id. ¶¶ 22, 23.   From October 2012 until January 2015, Ms. Ocampo worked, on average, 51 hours per week.   See id. ¶ 25. Ms. Ocampo was not paid an overtime premium for those hours she worked in excess of 40 hours per week.   See id. ¶ 15.

In addition, plaintiffs have submitted the declaration of Juan David Serna, who was also a plaintiff in the Ocampo action, and who worked at La Abundancia #2 and La Abundancia #3 as

a busser, dishwasher and prep cook from August 2013 until October 2014.[1]    See Serna Decl. ¶¶ 5, 6.    Mr. Serna worked eight-hour shifts, six days per week, but would often work an additional three hours after his shift or two eight-hour shifts per day.    See id. ¶¶ 8, 17, 18, 19, 20.    On average, Mr. Serna worked 79 hours per week.    See id. ¶ 21.    Throughout Mr. Serna's employment, he was paid $10 per hour in cash regardless of how many hours he worked per week and was not paid an overtime premium for those hours worked that exceeded 40 each week.[2]    See id. ¶ 10.

Finally, plaintiffs have offered the declaration of Jasmin Vargas Tavares, who was another plaintiff in the Ocampo action, and who worked as a waitress at La Abundancia #2, La Abundancia #3 and La Abundancia #4, from January 2012 until June 2014.[3]    See Tavares Decl. ¶¶ 5, 6.    Like Ms. Ocampo, Ms. Tavares worked, on average, eight-hour shifts, six days per week, and was paid $55 in cash for each shift.    See id. ¶¶ 8, 12, 23.    Occasionally,

---

[1] In paragraphs 5 and 6 of his declaration, Mr. Serna states that he started working for defendants in August 2013, but in paragraph 21 he states that he averaged 79 hours of work from August 2012 until October 2014.    Compare id. ¶¶ 5, 6, with ¶ 21.    The reference to August 2012 appears to be a typographical error; the declaration was originally submitted in support of Mr. Serna's motion for default judgment in the Ocampo action, wherein his counsel calculated damages based on Mr. Serna's having worked from August 2013 to October 2014.    See Ocampo action, Plaintiff's Memorandum of Law (Jan. 13, 2016) at 6, 14, 19, 20, DE #22; see also id., Amended Complaint (Mar. 26, 2015) ("Ocampo Compl.") ¶ 16, DE #6 (alleging Mr. Serna was employed from August 2013 until October 2014).

[2] In paragraph 10 of his declaration, Mr. Serna states that he was paid $10 per hour from the beginning of his employment through January 2015.    See id.    However, his other submissions in the Ocampo action state that his employment ended in October 2014.    See supra note 1.

[3] In the Amended Complaint filed in the Ocampo action, Tavares is alleged to have commenced her employment in January 2011.    See Ocampo, Compl. ¶ 12.    Likewise, in the default submissions in that case, counsel calculated damages based on Tavares' having worked for defendants starting in January 2011.    See Ocampo action, Declaration of Jacob Aronauer, Ex. D, DE #22-4.    However, in defendant Rojas' affidavit, which was submitted in the Ocampo action, he avers that Ms. Tavares began working for defendants in July 2012.    See Affidavit of Rubén Rojas (attached as Ex. D to Aronauer Decl.) ¶ 8(a).

6

she worked two shifts in one day.   See id. ¶¶ 21, 22.   At the end of each shift, Ms. Tavares

was required to account for the money she collected during the shift and to clean her tables,

which took approximately half an hour.   See id. ¶ 9.   Ms. Tavares worked, on average, 51

hours per week, but was not paid an overtime premium for hours worked in excess of 40 hours

per week.   See id. ¶¶ 14, 24.

In response to plaintiffs' motion, defendants have submitted the declaration of

individual defendant Rubén Rojas.   See Declaration of Rubén Rojas (June 17, 2017), DE #41.

In his declaration, Rojas admits that he is or has been a shareholder of each of the corporate

defendants, each of which owns and operates a different restaurant.   See id. ¶¶ 2, 3.

However, Rojas states that he does not determine the specific hours or rates of pay of

individual employees, or otherwise "get involved in the day to day decisions of the managers

of the different restaurant/bakeries . . . ."   See id. ¶ 3.

## DISCUSSION

## I.   STANDARDS FOR CONDITIONAL CERTIFICATION

FLSA claims may be pursued collectively pursuant to 29 U.S.C. § 216(b), which

provides that an action to recover unpaid wages:

> may be maintained against any employer . . . by any one or more
> employees for and in behalf of himself or themselves and other
> employees similarly situated.   No employee shall be a party
> plaintiff to any such action unless he gives his consent in writing
> to become such a party and such consent is filed in the court in
> which such action is brought.

29 U.S.C. § 216(b).   Courts have discretion under this section to direct a defendant employer to disclose the names and addresses of similarly situated potential plaintiffs and to authorize the sending of notice to those individuals, so that they may opt in to the collective action.   See Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).   Once a plaintiff opts in to a collective action by filing notice with the court, the statute of limitations on that plaintiff's FLSA claim is tolled.   See Robles v. Liberty Rest. Supply, Corp., No. 12-CV-5021 (FB)(VMS), 2013 WL 6684954, at *10 (E.D.N.Y. Dec. 18, 2013).

In determining whether to authorize the sending of notice to potential plaintiffs of the pendency of a collective action, district courts employ a two-step process.   See Myers, 624 F.3d at 554–55.   At the first stage, the court makes an initial determination of whether, based on the pleadings and affidavits, the plaintiff has demonstrated that the potential opt-in plaintiffs are "similarly situated" to the named plaintiffs.   See Myers, 624 F.3d at 554; Ahmed v. T.J. Maxx Corp., No. 10-CV-3609 (ADS)(ETB), 2013 WL 2649544, at *7 (E.D.N.Y. June 8, 2013).   If the "plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common plan or policy that violated the law,'" the court may authorize that notice be sent.   See Myers, 624 F.3d at 555 (citation omitted).   After discovery, the defendants may move for decertification, at which point the court will determine on a fuller record whether the plaintiffs who have opted in are, in fact, "similarly situated" to the named plaintiffs.   See id.   If the record reveals that they are not, the action may be decertified and the opt-in plaintiffs' claims dismissed without prejudice.   Id.

8

At the initial stage, "the court will look at the pleadings and affidavits" to analyze whether the plaintiff and putative class members are similarly situated.   See Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007); Flores v. Osaka Health SPA, Inc., No. 05 CIV. 962 (VMN)(KF), 2006 WL 695675, at *2 (S.D.N.Y. Mar. 16, 2006); Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 WL 278154, at *1 (S.D.N.Y. Feb. 2, 2006).   The "modest factual showing" that a plaintiff must make at the conditional certification stage "cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist."   Myers, 624 F.3d at 555 (internal citations omitted).   Although plaintiffs' burden is not onerous, they must provide actual evidence of a factual nexus between their situation and those that they claim are similarly situated rather than mere conclusory allegations.   See Flores, 2006 WL 695675, at *3; Morales, 2006 WL 278154, at *3; Levinson v. Primedia Inc., No. 02 CIV. 2222 (CBM), 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).

Evidence submitted by defendants disputing the facts alleged by plaintiffs do not undermine the "modest factual showing" that plaintiffs are required to show at this stage of the litigation.   See Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 67 (E.D.N.Y. 2016); Amador v. Morgan Stanley & Co. LLC, No. 11 Civ. 4326 (RJS), 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013); Winfield v. Citibank, N.A., 843 F.Supp.2d 397, 407 (S.D.N.Y. 2012).   The Court does not determine facts or make findings as to credibility at the notice stage.   See Fan v. Ping's on Mott, Inc., No. 13 Civ. 4939 (AT), 2014 WL 1512034, at *3 (S.D.N.Y. Apr.

14, 2014); Fonesca v. Dircksen & Talleyrand Inc., 13 Civ. 5124 (AT), 2014 WL 1487279, at

*3 (S.D.N.Y. Apr. 11, 2014); Chhab v. Darden Rests., Inc., No. 11 Civ. 8345 (NRB), 2013

WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013); Rosario v. Valentine Ave. Disc. Store, Co.,

828 F.Supp.2d 508, 514 (E.D.N.Y. 2011).

## II.    PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Plaintiffs seek authorization to send notice of this lawsuit to all waiters, bussers, prep

cooks, dishwashers and kitchen workers,[4] who worked at any of defendants' restaurants from

February 5, 2014 to the present, and to post the notice at all La Abundancia restaurants.   In

addition, plaintiffs seek disclosure of the names, addresses, telephone numbers and Social

Security numbers of all such current or former employees.

In response to the motion, defendants argue that plaintiffs have not identified any

employees who are similarly situated to them since many of the employees whom plaintiffs

seek to represent worked at different locations and held positions different from those held by

plaintiffs.   Defendants note that the three named plaintiffs comprise two dishwashers and one

waitress/counter attendant, who, between the three of them, worked for only two of

defendants' restaurants.   See Memorandum in Opposition (June 17, 2017) ("Def. Opp.") at 4,

DE #40.   Defendants further reject the affidavits of the Ocampo plaintiffs because those

individuals, having previously settled their claims, are not eligible to join the proposed class.

---

[4] It is unclear whether the term "kitchen worker" is intended to include employees other than dishwasher/cook, prep
cook or busser and whether there is a distinction between "prep cook" and "cook," as that term is used by plaintiffs
Pérez and Mendoza and by Mr. Serna.

See id. at 7.

The pleadings and affidavits submitted by plaintiffs satisfy the requisite "modest factual showing" that there are other "similarly situated" employees of defendants.   The Court finds that plaintiffs have done so with respect to waiters, bussers, prep cooks, dishwashers and kitchen workers at some of the La Abundancia locations but has failed to meet this lenient standard with respect to employees at other locations.

Plaintiffs have proffered information about their own compensation and work hours, and have submitted sworn statements from plaintiff Pérez and from three other employees who state that they had the same job duties as plaintiffs, were compensated similarly and worked similar hours.   Defendants do not appear to dispute that, at this stage, such allegations constitute a sufficient factual showing that at least some employees of defendants at certain of its locations are "similarly situated" to plaintiffs.   See Def. Opp. at 9 ("plaintiffs have failed to show that conditions at restaurant bakeries other than *La Abundancia #*'s 1 and 2, share common policies, or that specific employees at the other restaurant bakeries are victims of the same specific policies").   Nevertheless, defendants argue that plaintiffs' motion should be denied in its entirety because the collective sought by plaintiffs is overbroad in terms of job title and location.   Indeed, defendants contend that the three named plaintiffs share only two job titles and two of the restaurant locations.   See id. at 4.

All members of the proposed opt-in class need not share the same job duties.   See Dilonez v. Fox Linen Serv. Inc., 35 F.Supp.3d 247, 254 (E.D.N.Y. 2014).   There must, however, be "'some identifiable factual nexus which binds the named plaintiffs and potential

11

class members together as victims . . . .'" Jenkins v. TJX Cos. Inc., 853 F.Supp.2d 317,

322 (E.D.N.Y. 2012) (quoting Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y.

1997)); see also Cano v. Four M Food Corp., No. 08-CV-3005 (JFB) (AKT), 2009 WL

5710143, at *9 (E.D.N.Y. Feb. 3, 2009) ("Even though plaintiffs are certainly not required to

show that they are identically situated, or that they possess the same attributes with respect to

their job, they are required to show that they are subject to the same common policy or plan by

defendants.").   "[C]ourts routinely find employees similarly situated despite not occupying the

same positions or performing the same job functions and in the same locations, provided that

they are subject to a common unlawful policy or practice." Guaman v. 5 "M" Corp., No. 13

Civ. 03820 (LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) (internal quotation

marks and citation omitted) (certifying class of all non-exempt employees at one of four

restaurants); see Valerio, 314 F.R.D. at 73 (certifying class of all non-managerial employees

who work at home office and in the field); Romero v. La Revise Assocs., L.L.C., 968

F.Supp.2d 639, 648 (S.D.N.Y. 2013) (certifying class of all tipped employees and kitchen

staff).

    Here, plaintiffs have submitted sufficient evidence that defendants' waiters,

dishwashers, bussers, prep cooks and kitchen workers at certain locations were subject to the

same policy and practice of being denied overtime pay.   Plaintiffs have submitted affidavits

from two waitresses, two dishwashers/cooks, and one busser, in addition to the allegations

contained in the complaint pertaining to an additional dishwasher/cook and one waitress, all

stating that they were subject to the same policies and procedures regarding their work

schedule, the failure of defendants to record their hours, defendants' failure to provide them with wage notices and defendants' failure to pay overtime.

Although defendants are correct that the named plaintiffs themselves were employed only as waitress/cashier (Solano) and dishwasher/cook (Pérez and Mendoza), Mr. Serna, one of the declarants, worked not only as a dishwasher/cook, but also as a busser.   See Serna Decl. ¶ 5.   Like the other employees whose declarations have been submitted, Mr. Serna states that defendant Rojas supervised his work, hired him, set his rate of pay and his work schedule and paid his salary.   See id. ¶ 14; Tavares Decl. ¶ 18; Ocampo Decl. ¶ 19. Moreover, plaintiffs allege in the complaint that dishwashers, cooks, bussers and kitchen workers were used interchangeably.   See Compl. ¶ 98.   Like the waiters, the other workers are alleged to have worked eight-hour shifts, five or six days per week, without being paid an overtime premium.   See id. ¶¶ 99, 101, 103.   That plaintiffs and the declarants, who had various job titles, claim to have been subject to the same violations of the FLSA, supports an inference that other restaurant employees at those locations, including kitchen workers, were subject to the same policies that resulted in a denial of overtime.   See Zaldivar v. JMJ Caterers, Inc., 166 F.Supp.3d 310, 323 (E.D.N.Y. 2016); Gauman v. DL Rest. Dev. LLC, No. 14 Civ. 2587 (RWS), 2015 WL 6526440, at *2 (S.D.N.Y. Oct. 28, 2015); Guaman, 2013 WL 5745905, at *4; Liang v. J.C. Broadway Rest., Inc., No. 12 Civ. 1054, 2013 WL 2284882, at *2 (S.D.N.Y. May 23, 2013).   The fact that the Ocampo plaintiffs are not eligible to join the proposed collective does not diminish the probative value of their declarations, which constitute evidence that defendants subjected their employees to unlawful

13

practices under the FLSA.   See Lujan v. Cabana Mgmt., Inc., No. 10-CV-755 (ILG), 2011

WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011) (time-barred employees' affidavits are probative

of employer's wage and hour practices).

     Defendants' reliance on Mata v. Foodbridge LLC, No. 14 Civ. 8754 (ER), 2015 WL

3457293 (S.D.N.Y. June 1, 2015), for the proposition that plaintiffs seek certification of an

overly broad class, is misplaced.   See Def. Opp. at 9.   In Mata, the court denied conditional

certification of all non-exempt restaurant workers, including cooks, line-cooks, food preparers,

dishwashers, delivery persons, counter persons, and cashiers.   See 2015 WL 3457293, at *3.

There, however, the only evidence submitted was the affidavit of the lone plaintiff, who

described the terms of his own employment and stated that, based on his observations and

conversations with other employees, they were subject to similar FLSA violations.   See id. at

*3-4.   The court found plaintiff's affidavit insufficient because it contained no details

regarding his observations and conversations that would provide factual support for his claim

that a common scheme existed.   See id.   In contrast, in addition to plaintiff Pérez's

declaration, plaintiffs herein have submitted the declarations of three other employees who

worked in various positions at several of defendants' restaurants and were similarly denied

overtime pay.

     Defendants further argue that plaintiffs have failed to show that employees of all the La

Abundancia restaurants were subject to the same policies and procedures.   Plaintiffs have

submitted affidavits from employees who have worked at La Abundancia #3 (Ocampo, Serna

and Tavares) and #4 (Tavares) that describe the same policies and procedures as those

described by plaintiffs, who worked at La Abundancia #1 and #2, including the denial of overtime pay.    Thus, plaintiffs have demonstrated that there may have been a common policy or plan across those four restaurants.    Nevertheless, plaintiffs have not submitted any evidence regarding the practices followed at La Abundancia #5 and #6; none of the plaintiffs or the declarants worked at either of those locations, nor do they claim to have spoken to any employees or otherwise learned of the practices at those locations through their personal observations.

In arguing that employees of those two restaurants were subject to the same common scheme, plaintiffs rely primarily on their allegation that defendant Rojas owns all six La Abundancia restaurants, see Pérez Decl. ¶ 2, and they submit a copy of the relevant pages of the laabundancia.com website, which lists each of the six restaurants at issue, see Website Pages.    Plaintiffs contend that the website "demonstrates that all 6 locations operate as a single integrated enterprise."    See Pl. Reply at 2.    However, the fact that the restaurants have the same name and are commonly owned is insufficient to show that they applied the same pay policies as the restaurants at which plaintiffs or the declarants worked.    See Rojas v. Kalesmeno Corp., No. 17 Civ. 0164 (JCF), 2017 WL 3085340, at *4-5 (S.D.N.Y. July 19, 2017) (denying conditional certification for commonly owned restaurant locations other than those at which plaintiffs worked); Apolinar v. R.J. 49 Rest., LLC, 15-cv-8655 (KBF), 2016 WL 2903278, at *7 (S.D.N.Y. May 18, 2016) (conditionally certifying class only of employees who worked at plaintiffs' location, not all locations listed on same website); Becerra v. IM LLC-I, No. 14-cv-2671, 2016 WL 8968978, at *4 (E.D.N.Y. Feb. 20, 2016) (affirming

15

denial of conditional certification of class of employees from twelve Il Mulino restaurants); Gu

v. T.C. Chikurin, Inc., No. CV 2013-2322 (SJ), 2014 WL 1515877, at *4-5 (E.D.N.Y. Apr.

17, 2014) (denying conditional certification as to five restaurant locations at which plaintiffs

did not work); Sharma v. Burberry Ltd., 52 F.Supp.3d 443, 458-59 (E.D.N.Y. 2014)

(conditionally certifying class only of employees who worked at same store as plaintiffs).

        By contrast, in those cases in which courts have authorized notice to be sent to the

employees of all restaurant locations, the plaintiffs' showings were much greater than that

proffered here.    See, e.g., Marin v. Apple-Metro, Inc., No. 12 CV 5274 (ENV), 2014 WL

11035376, at *6 (E.D.N.Y. July 29, 2014) (all 36 restaurants operate uniformly within the

franchise and have centralized operations, including centralized computer payroll system);

Lamb v. Singh Hosp. Grp., Inc., No. 11-CV-6060 (MKB), 2013 WL 5502844, at *5

(E.D.N.Y. Sept. 30, 2013) (adopting report and recommendation that class be conditionally

certified of employees of all commonly owned restaurants where plaintiffs alleged that they

spoke to workers at other restaurants who complained of same policies, and it was undisputed

that all restaurants used the same computer payment system).    The court's decision in

Mendoza v. Ashiya Sushi 5, Inc., No. 12 Civ. 8629 (KPF), 2013 WL 5211839 (S.D.N.Y.

Sept. 16, 2013), is instructive.    There, plaintiff sought conditional certification of a collective

action of employees of all Ashiya Sushi restaurants.    In support, plaintiff pointed to the fact

that the manager of the restaurant at which plaintiff worked (Ashiya Sushi 5) used a business

card that displayed the names of other Ashiya Sushi locations.    In addition, plaintiff averred

that employees of other Ashiya Sushi locations in *New York* were sent to work at Ashiya Sushi

16

5 when it was busy.   Accordingly, the court found that plaintiff had made a sufficient showing with respect to only restaurant locations in New York City but not any Ashiya Sushi location outside of New York.   See id. at *5.

Therefore, the Court denies plaintiffs' request that notice be sent to employees of La Abundancia #5 and #6.

## III.   SCOPE OF NOTICE

### A.   Minimum Wage Claim

Although not raised by defendants, the Court finds that plaintiffs have not established that there are similarly situated workers who were denied minimum wages.   In fact, only plaintiff Solano alleges that she was denied the required hourly minimum wage.   See Compl. ¶ 128.   The waitresses who submitted declarations in support of the instant motion do not corroborate Solano's claim that defendants failed to pay their waitresses the minimum wage. See generally Ocampo Decl.; Tavares Decl.   Absent any evidence of a common scheme to deprive plaintiffs of the minimum wage, the Court denies plaintiffs' request to include such a claim in its notice to potential collective action members.

### B.   Relevant Time Period for Notice

Another issue that defendants failed to address is the temporal scope of the collective. Plaintiffs seek to notify potential class members who worked for defendants from February 5, 2014, or three years before the initiation of this action.

The FLSA provides for a three-year statute of limitations for willful violations, but the limitations period is tolled for opt-in plaintiffs from the date on which their written consent to

join is filed with the court.  See Robles, 2013 WL 6684954, at *10.  Some courts in this

Circuit have calculated the notice period from the date of the complaint, in consideration of

potential "equitable tolling issues" that may arise for prospective plaintiffs.  See Velasquez v.

Digital Page, Inc., No. CV-11-3892 (LDW)(AKT), 2014 WL 2048425, at *11 (E.D.N.Y.

May 19, 2014) (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F.Supp.2d 445, 451

(S.D.N.Y. 2011)); see also Sharma, 52 F.Supp.3d at 464-65 (E.D.N.Y. 2014) (adopting the

filing of the complaint as the start date for calculating the time period for notice "[i]n an

abundance of caution.").  Other in-circuit decisions have calculated the time frame for

provision of notice from three years prior to the date of the order conditionally certifying the

collective action.  See, e.g., Ritz v. Mike Rory Corp., No. 12-CV-367 (JBW) (RML), 2013

WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013), reconsideration denied, 2013 WL 1968493

(E.D.N.Y. May 13, 2013); Enriquez v. Cherry Hill Mkt. Corp., No. 10-CV-5616 (FB)

(ALC), 2012 WL 440691, at *3 (E.D.N.Y. Feb. 10, 2012).

     Since the complaint alleges willful conduct by defendants, the Court agrees that the

three-year statute of limitations for FLSA claims should apply.  See Zaldivar, 166 F.Supp.3d

at 324-25.  Particularly where, as here, plaintiffs allege that defendants failed to provide

wage-and-hour notices, courts have found equitable tolling issues to apply and have tied the

relevant notice period to the filing of the complaint.  See id. at 325; Valerio, 314 F.R.D. at

74.  Since defendants have not objected to having court-authorized notice sent to employees

who worked for defendants from February 5, 2014, the Court approves notice utilizing that

starting date.  However, although plaintiffs seek authorization for notice to employees who

worked for defendants up to the present, they allege in the complaint that defendants stopped requiring employees to work more than 40 hours per week in May 2015, after the Ocampo action was filed.   See Compl. ¶¶ 111-12, 120-21; see also ¶¶ 130-31.   Therefore, notice should be sent to employees who worked for defendants from February 5, 2014 through April 2015.

### C.   Deadline to Opt In

Plaintiff proposes that party plaintiffs be required to opt in within 60 days from the date of this order.   See Proposed Notice (attached as Ex. A to Aronauer Decl.) at 3.   Courts in this Circuit have frequently permitted opt-in periods of 60 days, particularly where there may be difficulty reaching some of the potential opt-in plaintiffs.   See Robles, 2013 WL 6684954, at *10 (collecting cases).   The Court approves plaintiffs' proposed deadline for opt-in plaintiffs to send their consent forms no later than October 3, 2017, or 60 days from the date of this order.

## IV.   CONSENT-TO-JOIN FORMS RETURNABLE TO THE COURT

Plaintiff proposes that all opt-in consent forms be sent to plaintiffs' counsel.   See Proposed Notice at 6.

Some courts within this District have permitted notices to be returned to plaintiffs' counsel where, as here, the notice informs the potential opt-in plaintiffs that they have the right to retain separate counsel.   See Dilonez, 2014 WL 3893094, at *9.   Nonetheless, "[t]he common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel."   Velasquez, 2014 WL 2048425, at

19

*14; see also Rosario, 828 F.Supp.2d at 521.   Cases in this District have suggested that directing opt-in plaintiffs to return their forms to plaintiffs' counsel "implicitly discourages opt-in plaintiffs from selecting other counsel." Lujan, 2011 WL 317984, at *13.   Accordingly, the Notice must provide that opt-in consent forms be sent to the Court, i.e., to the chambers of the undersigned magistrate judge.

## V.   POSTING THE NOTICE

Plaintiffs also request that the opt-in notice be posted in the workplaces of defendants' employees.   See Pl. Mem. at 10.   Courts in this district routinely authorize the posting of notice within defendants' businesses.   See, e.g., Enriquez, 2012 WL 440691, at *5 ("Posting the notice is a reasonable means of assuaging the vagaries of notice by mail, and would not unduly burden the defendants."); Lujan, 2011 WL 317984, at *14.   Defendants therefore shall post copies of the Notice, including Spanish translations, in a location conspicuous to all relevant employees at La Abundancia #1, #2, #3, and #4, for the duration of the opt-in period. See Lujan, 2011 WL 317984, at *14.

## VI.   DISCOVERY OF IDENTIFYING INFORMATION

Plaintiffs request that the Court direct defendants to produce a computer-readable list containing the name, last known mailing address, alternate address (if any), all known telephone numbers, Social Security numbers and dates of employment of potential collective members.

"'In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential

20

collective members.'" Valerio, 314 F.R.D. at 74-75 (quoting Velasquez, 2014 WL 2048425, at *15) (collecting cases); see also Zaldivar, 166 F.Supp.3d at 326.   However, courts are reluctant to require the disclosure of personal information, such as Social Security numbers, absent a showing that the information is necessary for plaintiffs to notify potential opt-ins of the litigation.   See Zaldivar, 166 F.Supp.3d at 326-27; Valerio, 314 F.R.D. at 75. Accordingly, subject to a confidentiality stipulation to be drafted by the parties, defendants are directed to produce to plaintiffs, in a computer-readable format, a list of the names, addresses, telephone numbers, email addresses, work locations and dates of employment for all potential class members who worked at La Abundancia #1, #2, #3, or #4 during the relevant time period.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for conditional certification as a FLSA collective action, pursuant to 29 U.S.C.§ 216(b), and for court-authorized notice, is granted in part, in accordance with the rulings detailed in this opinion.   The parties are directed to submit, by August 11, 2017, a modified notice consistent with this decision, along with a confidentiality stipulation to be so-ordered by the Court.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 4, 2017

/s/ *Roanne L. Mann*
ROANNE L. MANN
CHIEF UNITED STATES MAGISTRATE JUDGE