UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mogollan,

                              Plaintiff,

-against-

La Abundancia Bakery & Restaurant Inc. et al.,

                              Defendants.

1:18-cv-03202 (GBD) (SDA)

OPINION AND ORDER

**STEWART D. AARON, United States Magistrate Judge:**

Plaintiff Angel Mogollan ("Plaintiff" or "Mogollan") filed this putative class and collective action on April 12, 2018 against defendants La Abundancia Bakery & Restaurant Inc.; 63-12 La Abundancia Inc. ("La Abundancia #1"); 75-02 La Abundancia Bakery and Restaurant Corp. ("La Abundancia #2"); 81-16 La Abundancia Inc. ("La Abundancia #3"); 37-01 La Abundancia Inc. ("La Abundancia #4"); 94-19 La Abundancia Inc. ("La Abundancia # 5"); 88-26 La Abundancia Inc. ("La Abundancia #6"), Monica Ferrerosa ("Ferrerosa") and Rubén Rojas ("Rojas") (collectively, "Defendants"), asserting claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), for unpaid overtime and minimum wages. Presently before the Court is Plaintiff's motion, pursuant to 29 U.S.C. § 216(b), for conditional collective certification. (Pl. Mot., ECF No. 50.) For the reasons set forth below, the Court GRANTS IN PART Plaintiff's motion.

## BACKGROUND

Plaintiff alleges that Defendants operated a "single integrated enterprise" under the trade name "La Abundancia" at six locations: La Abundancia #1 at 63-10 Broadway Ave., Woodside, NY 11377; La Abundancia #2 at 75-02 Roosevelt Ave., Jackson Heights, NY 11372; La Abundancia #3

at 81-16 Roosevelt Ave, Jackson Heights, NY 11372; La Abundancia #4 at 37-01 Junction Blvd., Corona, NY 11368; La Abundancia #5 at 94-19 Roosevelt Ave, Jackson Heights, NY 11372; and 88-28 37th Ave., Jackson Heights, NY 11372. (Am. Compl., ECF No. 40, ¶¶ 6, 14.) He alleges that Rojas is the president and owner of all the restaurants and that Ferrerosa is a senior managerial official of all the restaurants. (*Id*. ¶ 14.)

The Amended Complaint alleges that Mogollan worked as a cook at La Abundancia #2 from October 2016 through October 2017, but that he was required to work at all the other La Abundancia restaurant locations "on an as-needed basis." (Am. Compl. ¶ 30.) He alleges that he was not paid regular and overtime wages, that he was not paid any of the spread-of-hours premiums to which he was entitled and that he was not provided with wage notices or wage statements. (*Id.* ¶¶ 32-39.)

Plaintiff seeks to bring his FLSA claims as a collective action on behalf of all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, counterpersons, cashiers and waiters) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "FLSA Collective Plaintiffs"). (Am. Compl. ¶ 19.) Plaintiff alleges that he and the other FLSA Collective Plaintiffs "are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation at the rate of one and one half times the regular rate for work performed in excess of forty (40) hours per week." (*Id*. ¶ 20.)

2

In support of his certification motion, Plaintiff submits his own declaration, in which he identifies seven employees who he observed who worked at some or all of the La Abundancia restaurant locations and with whom he spoke who "were deprived of regular and overtime compensation." (Mogollan Decl., ECF No. 52, ¶¶ 4-14.) These employees are Efren Aguila, and six other individuals whose last names are omitted, but whose first names are: Carlos, Max, Victoria, Marina and two individuals named Adrianna. (*Id*. ¶ 4.) Plaintiff also refers to a conversation with a restaurant manager named Aracelli Diaz who he says forced him (Plaintiff) to work even though he was not being paid. (*Id*. ¶ 11.)

In support of his motion, Plaintiff also submitted Declarations from three individuals that were filed in a previous lawsuit in the United States District Court for the Eastern District of New York, *Ocampo v. La Abundancia Bakery & Restaurants Inc.*, Case No. 15-CV-01134: (1) Declaration of Isabel Ocampo ("Ocampo"), dated September 11, 2015 (Ocampo Decl., ECF No. 51-3); (2) Declaration of Juan David Serna ("Serna"), dated September 11, 2015 (Serna Decl., ECF No. 51-4); and (3) Declaration of Jasmin Vargas Tavares ("Tavares"), dated September 11, 2015. (Tavares Decl., ECF No. 51-5.) In addition, Plaintiff submitted a Declaration that was filed in another previous lawsuit in the United States District Court for the Eastern District of New York, entitled *Perez v. La Abundancia Bakery & Restaurants Inc.*, Case No. 17-CV-00656: the Declaration of Abraham Perez ("Perez"), dated March 29, 2017.[1] (Perez Decl., ECF No. 51-6.)

Ocampo worked as a waitress at La Abundancia #2 and La Abundancia #3 from August 2011 until January 2015. (*See* Ocampo Decl. ¶¶ 5-6.) On average, she worked one eight-hour shift, six days per week, and was paid $55 for each shift. (*See id*. ¶¶ 9, 13, 24.) At the end of each

---

[1] Both prior lawsuits in the Eastern District of New York settled.

shift, Ocampo was required to account for the money she collected during the shift and to clean her tables, which took approximately half an hour. (*See id*. ¶ 10.) On some occasions, she was assigned to work two shifts in one day. (*See id*. ¶¶ 22-23.) From October 2012 until January 2015, Ocampo worked, on average, 51 hours per week. (*See id*. ¶ 25.) Ocampo was not paid an overtime premium for those hours she worked in excess of 40 hours per week. (*See id*. ¶ 15.)

Serna worked at La Abundancia #2 and La Abundancia #3 as a busser, dishwasher and prep cook from August 2013 until October 2014. (*See* Serna Decl.[2] ¶¶ 5-6.) He worked eight-hour shifts, six days per week, but often would work an additional three hours after his shift or two eight-hour shifts per day. (*See id*. ¶¶ 8, 17-20.) On average, Serna worked 79 hours per week. (*See id*. ¶ 21.) Throughout his employment, Serna was paid $10 per hour in cash regardless of how many hours he worked per week and was not paid an overtime premium for those hours worked that exceeded 40 each week. (*See id*. ¶ 10.)

Tavares worked as a waitress at La Abundancia #2, La Abundancia #3 and La Abundancia #4, from January 2012 until June 2014. (*See* Tavares Decl. ¶¶ 5-6.) Like Ocampo, Tavares worked, on average, eight-hour shifts, six days per week, and was paid $55 in cash for each shift. (*See id*. ¶¶ 8, 12, 23.) Occasionally, she worked two shifts in one day. (*See id*. ¶¶ 21-22.) At the end of each shift, Tavares was required to account for the money she collected during the shift and to clean her tables, which took approximately half an hour. (*See id*. ¶ 9.) Tavares worked, on

---

[2] In paragraphs 5 and 6 of his Declaration, Serna states that he started working for Defendants in August 2013, but in paragraph 21 he states that he averaged 79 hours of work from August 2012 until October 2014. (*Compare id*. ¶¶ 5, 6, *with* ¶ 21.) As noted by Magistrate Judge Mann in her conditional certification decision in another case against the same defendants in the Eastern District of New York, the reference to August 2012 in Serna's Declaration appears to be a typographical error. *See Perez v. La Abundancia Bakery & Rest. Inc.*, 17-CV-0656 (RLM), 2017 U.S. Dist. LEXIS 123550, *8, n.1 (E.D.N.Y. Aug. 4, 2017).

average, 51 hours per week, but was not paid an overtime premium for hours worked in excess of 40 hours per week. (*See id*. ¶¶ 14, 24.)

Perez worked at La Abundancia #2 as a dishwasher and a cook from 2011 to March 2017. (Perez Decl. ¶¶ 1.) For the first four months, he worked seven days a week, and thereafter worked six days a week, in eight-hour shifts. (*See id*. ¶¶ 3, 5.) He claims not to have been paid overtime, and that other employees complained to him about not being paid overtime. (*See id*. ¶¶ 8-11.)

Defendants submitted numerous Declarations and Affidavits in response to Plaintiff's motion. First, they submit the Declaration of Defendant Rojas, who states that he knows Plaintiff and that Plaintiff worked "exclusively" at La Abundancia #2. (Rojas Decl., ECF No. 60, ¶ 4.) He also states that he gathered Declarations from seven of the eight individuals identified in Plaintiff's Declaration, who deny Plaintiff's allegations attributed to them. (*Id*.) These documents submitted by Defendants are as follows:

1) There is a Declaration of Carlos Montoya ("Montoya"), who worked as a dishwasher at La Abundancia #2, and who met Plaintiff while working there. Montoya states that he does not recall ever having spoken with Plaintiff about wage payments. Moreover, Montoya states that he never worked at any location but La Abundancia #2 and that he never worked more than 40 hours per week. He also denies the other statements attributed to him. (Montoya Decl., ECF No. 60-1, ¶¶ 2-5.)

2) There is a Declaration of Efren Aguilar Palma ("Palma"), who worked at La Abundancia #4, and occasionally worked as a dishwasher at La Abundancia #2. Palma states that

5

he never saw Plaintiff in any bakery other than La Abundancia #2 and that he never spoke with Plaintiff about his hours or pay. (Palma Decl., ECF No. 60-2, ¶¶ 2-3.)

3) There is a Declaration of Maximino Torralba ("Torralba"), who worked as a cook (and then a manager) at La Abundancia #2. Torralba states that he worked with Plaintiff on a daily basis and supervised him. Torralba asserts that Plaintiff worked as a dishwasher at La Abundancia #2, but that he never worked more than eight hours a day or more than 40 hours per week. Torralba also states that Plaintiff never complained to him, or anyone else in his presence about Plaintiff's pay. (Torralba Decl., ECF No. 60-3, ¶¶ 2-5.)

4) There is a Declaration of Adriana Rengifo ("Rengifo"), who worked as a waitress at La Abundancia #2, where she often worked with Plaintiff during the afternoon shift. Rengifo states that she never had any conversation with Plaintiff about him not being paid for all his work hours. (Rengifo Decl., ECF No. 60-4, ¶¶ 2-5.)

5) There is an Affidavit of Maria Victoria Barreto ("Barreto"), who worked as a waitress at La Abundancia #2. During her work, Barreto observed Plaintiff at that location working as a dishwasher. She does not recall having spoken with Plaintiff about his pay. (Barreto Aff., ECF No. 60-5, ¶¶ 2-4.)

6) There is an Affidavit of Luz Marina Bolonis Jimenez ("Jimenez"), who worked as a cook at La Abundancia #2, and still works there. She worked with Plainitiff at that location and is not aware of him working at any other location. Jimenez does not recall discussing Plaintiff's pay with him. (Jimenez Aff., ECF No. 60-6, ¶¶ 2-4.)

7) There is an Affidavit of Aracelly Cifuentes, a/k/a Aracelly Diaz ("Cifentues"), who worked at general manager at La Abundancia #2. Cifuentes worked the morning shift, so would

6

only see Plaintiff (who worked the afternoon shift) as she was leaving, and he was arriving. She states that Plaintiff never complained to her about his pay and that he never worked in any other location. Cifuentes states that she fired Plaintiff and had given him written warnings, which she attaches to her affidavit. (Cifuentes Aff., ECF No. 60-7, ¶¶ 2-5.)

Plaintiff filed his reply memorandum on April 3, 2019. (Reply, ECF No. 72.) He asks the Court to disregard the Declarations and Affidavits that were submitted on behalf of Defendants. (*Id*. at 3-8.)

## DISCUSSION

I. **Legal Standards**

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). While the statute does not prescribe any procedures for approval of collective actions, Section 216(b) has long been construed to grant authority to a district court to mandate that notice be given to potential plaintiffs informing them of the option to join the suit. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs"); *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) (per curiam) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case."). Orders

authorizing notice are sometimes referred to as orders "certifying" a collective action, even though the FLSA does not contain a certification mechanism. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010). Where a court refers to "certifying" a collective action, however, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals. *Id*. The approval of a collective action is a "'case management' tool for district courts to employ in 'appropriate cases.'" *Id*. (quoting *Hoffmann-La Roche*, 493 U.S. at 169, 174).

The Second Circuit has endorsed a "two-step process" for approval of an FLSA collective action:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. [*Myers*,] 624 F.[3]d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs. *Id*.

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). Thus, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)).

At the initial stage, "the court will look at the pleadings and affidavits" to analyze whether the plaintiff and putative class members are similarly situated. *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007). At this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the

law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citation omitted); *accord Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 547 (S.D.N.Y. 2015). While only a "modest factual showing" is required, the burden on a plaintiff "is not non-existent and the factual showing, even if modest, must still be based on some substance." *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555; *accord Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014).

II. **Application**

The Court grants in part Plaintiff's motion for conditional certification. Plaintiff has met his "modest factual showing" that there are similarly situated employees who worked at La Abundancia #2, which is the location where Plaintiff worked as a cook. The Court finds that the record with respect to the other five locations where Plaintiff purportedly worked on an "as needed" basis is not sufficient to grant conditional certification as to the other locations. *See Perez*, 2017 U.S. Dist. LEXIS 123550 at *19 ("the fact that the restaurants have the same name and are commonly owned is insufficient to show that they applied the same pay policies as the restaurants at which plaintiffs or the declarants worked"). Thus, Plaintiff's motion for conditional certification as to the locations other than La Abundancia #2 is denied without prejudice.

The question of preliminary certification is typically decided without "the benefit of full discovery," based only on the "pleadings, affidavits and declarations submitted by the plaintiff." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016). The Court need not resolve

factual disputes or make credibility determinations at this juncture. Thus, the Court grants conditional certification of a class of all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, counterpersons, cashiers and waiters) employed by La Abundancia #2 on or after the date that is six (6) years before the filing of the Complaint, *i.e.*, April 12, 2012. Defendants will have an opportunity following discovery to move to de-certify the collective action if a fuller record reveals that those who opt in to the action are not similarly situated to the Plaintiff.

With respect to the locations other than La Abundancia #2, Plaintiff may take the depositions of the persons whose declarations and affidavits were submitted in opposition to the certification motion so that Plaintiff may renew his motion as to the other locations at a later time. *See Mata v. Foodbridge LLC*, 2015 Wage & Hour Cas. 2d (BNA) 171521, 2015 WL 3457293, at *4 (S.D.N.Y. June 1, 2015) (ordering identification of "the seventeen Named Coworkers identified" in connection with certification motion so that motion could be renewed after discovery from them).

Lastly, Plaintiff also sought as part of his motion an Order "that the FLSA statute of limitations be tolled until such time that Plaintiff is able to send notice to potential opt-in plaintiffs." (Pl. Mem., ECF No. 51, at 16.) The Court denies that relief without prejudice. The Court has "no basis for making a ruling at this time that any current or future opt-in employees' claims must be equitably tolled given that there has been no showing that they have met the 'diligence' prong of the equitable tolling doctrine." *See Contrera v. Langer*, 278 F. Supp. 3d 702, 725 (S.D.N.Y. 2017).

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for conditional certification is GRANTED IN PART. The Court conditionally certifies a class of all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, counterpersons, cashiers and waiters) employed by 75-02 La Abundancia Bakery and Restaurant Corp. on or after April 12, 2012. The parties shall meet and confer as to the form of notice to be distributed and to refer any disputes between the parties regarding the notice to the Court. The form of notice or any disputes relating thereto shall be submitted within seven days of the date of this Opinion and Order.

**SO ORDERED.**

DATED:     New York, New York
               April 8, 2019

                                               _____
                                               STEWART D. AARON
                                               United States Magistrate Judge