LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

ANGEL MOGOLLAN and ALBA MARIA MEJIA,
*on behalf of themselves, FLSA Collective*
*Plaintiffs and Class members,*

                       Plaintiffs,

 

                    v.

LA ABUNDANCIA BAKERY & RESTAURANT INC.,
63-12 LA ABUNDANCIA INC.,
75-02 LA ABUNDANCIA BAKERY AND RESTAURANT CORP.,
81-16 LA ABUNDANCIA INC.,
M. ARROYAVE FOOD CORP.,
37-01 LA ABUNDANCIA INC.,
V. ROJAS FOOD CORP,
94-19 LA ABUNDANCIA INC.,
153-40 LA ABUNDANCIA INC.,
88-26 LA ABUNDANCIA INC.,
MONICA FERREROSA,
and RUBEN ROJAS,

                       Defendants.

_____

Case No.: 18-CV-3202


**SECOND AMENDED**
**CLASS AND**
**COLLECTIVE ACTION**
**COMPLAINT**

**Jury Trial Demanded**

 

Plaintiff ANGEL MOGOLLAN and ALBA MARIA MEJIA ("Plaintiffs"), on behalf of

themselves, FLSA Collective Plaintiffs and Class Members, by and through their undersigned

attorneys, hereby file this Second Amended Class and Collective Action Complaint against Defendants, LA ABUNDANCIA BAKERY & RESTAURANT INC., 63-12 LA ABUNDANCIA INC., 75-02 LA ABUNDANCIA BAKERY AND RESTAURANT CORP., 81-16 LA ABUNDANCIA INC., M. ARROYAVE FOOD CORP., 37-01 LA ABUNDANCIA INC., V. ROJAS FOOD CORP., 94-19 LA ABUNDANCIA INC., 153-40 LA ABUNDANCIA INC., and 88-26 LA ABUNDANCIA INC. ("Corporate Defendants"), MONICA FERREROSA and RUBEN ROJAS ("Individual Defendants," and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid regular and overtime compensation, (2) liquidated damages and (3) attorneys' fees and costs.

2.      Plaintiffs further allege, pursuant to New York Labor Law ("NYLL"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages resulting from an invalid tip credit, (1) unpaid regular and overtime compensation, (2) unpaid spread of hours premium, (3) statutory penalties, (4) liquidated damages and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff ANGEL MOGOLLAN, for all relevant time periods, was a resident of Kings County, New York.

6.      Plaintiff ALBA MARIA MEJIA, for all relevant time periods, was a resident of Queens County, New York

7.      Defendants operate (or have previously operated) a restaurant enterprise under the common trade name "La Abundancia Bakery & Restaurant" at the following locations:

    a.  63-10 Broadway Ave., Woodside, NY 11377 ("La Abundancia #1");

    b.  75-02 Roosevelt Ave., Jackson Heights, NY 11372 ("La Abundancia #2");

    c.  81-16 Roosevelt Ave, Jackson Heights, NY 11372 ("La Abundancia #3");

    d.  37-01 Junction Blvd., Corona, NY 11368 ("La Abundancia #4");

    e.  94-19 Roosevelt Ave, Jackson Heights, NY 11372 ("La Abundancia #5");

    f.  88-28 37th Ave., Jackson Heights, NY 11372 ("La Abundancia #6") (closed in 2018);

    g.  153-40 Hillside Avenue, Jamaica, New York 11432 ("La Abundancia #7") and

8.      Corporate Defendant, LA ABUNDANCIA BAKERY & RESTAURANT INC., is a domestic business corporation organized under the laws of the State of New York with a principal executive office and an address for service of process located at 63-10 Broadway, Woodside, NY 11377.

9.      Corporate Defendant, 63-12 LA ABUNDANCIA INC., is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 63-10 Broadway Ave., Woodside, NY 11377 and an address for service of process located at 63-14/63-16 Broadway, Woodside, NY 11377.

10.     Corporate Defendant, 75-02 LA ABUNDANCIA BAKERY AND RESTAURANT CORP., is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 75-02 Roosevelt Ave., Jackson Heights, NY 11372.

11.     Corporate Defendant, 81-16 LA ABUNDANCIA INC., is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 81-16 Roosevelt Ave, Jackson Heights, NY 11372.

12.     Corporate Defendant, M. ARROYAVE FOOD CORP., is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 81-16 Roosevelt Ave, Jackson Heights, NY 11372.

13.     Corporate Defendant, 37-01 LA ABUNDANCIA INC., is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 37-01 Junction Blvd., Corona, NY 11368.

14.     Corporate Defendant, V. ROJAS FOOD CORP., is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 37-01 Junction Blvd., Corona, NY 11368.

15.     Corporate Defendant, 94-19 LA ABUNDANCIA INC., is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 94-19 Roosevelt Ave, Jackson Heights, NY 11372.

16.     Corporate Defendant, 88-26 LA ABUNDANCIA INC., is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 88-28 37th Ave., Jackson Heights, NY 11372 and an address for service of process located at 88-26 37th Ave., Jackson Heights, NY 11372.

17.     Corporate Defendant, 153-40 LA ABUNDANCIA INC., is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 153-40 Hillside Avenue, Jamaica, New York 11432.

18.     Defendants operate the "La Abundancia" locations as a single integrated enterprise, as shown by the following:

**Interrelation of Operations**

- The Restaurants are each operated through the respective corporate Defendants under the common trade name, "La Abundancia".

- The Restaurants share a website ([www.laabundanciabakery.com](www.laabundanciabakery.com)), at which all Restaurant locations are advertised.

- The website provides a single telephone number and email for customers to contact all of the "La Abundancia" Restaurants.

- The Restaurants share common menus of cooked foods, baked goods, and other items, all of which are available on Defendants' website.

- Goods and supplies are interchangeable between the Restaurants.

**Centralized Control of Labor Relations**

- Employees are interchangeable between the Restaurants. Plaintiff and similarly situated employees were transferred between the Restaurants pursuant to the instructions of managerial employees.

- The same wage and hour policies were maintained across all Restaurant locations.

**Common Management, Ownership and Financial Control**

- Individual Defendant RUBEN ROJAS is the president and owner of all of the Restaurants (through his ownership of the corporate Defendants), as described on Defendants' website.

- RUBEN ROJAS holds the trademark for "La Abundancia", the common trade name for the Restaurants.

- Managers and non-managerial employees of all the Restaurants are directly instructed to perform tasks by Defendant RUBEN ROJAS.

- RUBEN ROJAS maintains financial control over both Supermarkets.

19.     RUBEN ROJAS exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. RUBEN ROJAS exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (vi) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to RUBEN ROJAS regarding any of their employment terms, and RUBEN ROJAS would have the authority to affect any changes to the quality and terms of the employees' employment. RUBEN ROJAS regularly visited the restaurants and directly reprimanded any employee who did not perform his duties correctly. RUBEN ROJAS ensured that employees effectively serve customers and that the business is operating efficiently and profitably. RUBEN ROJAS exercised functional control over the business and financial operations of all Corporate Defendants.

20.     Individual Defendant, MONICA FERREROSA, is the Chief Executive Officer of 63-10 LA ABUNDANCIA INC. MONICA FERREROSA exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. MONICA FERREROSA exercised the power and authority to (i) fire and hire, (ii) determine rate and method

of pay, (iii) determine work schedules and (vi) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to MONICA FERREROSA regarding any of their employment terms, and MONICA FERREROSA would have the authority to affect any changes to the quality and terms of the employees' employment. MONICA FERREROSA ensured that employees effectively serve customers and that the business is operating efficiently and profitably. MONICA FERREROSA exercised functional control over the business and financial operations of all Corporate Defendants.

21.     At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

22.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by the Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Plaintiffs bring claims for relief as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, counterpersons, cashiers and waiters) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

24.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

them overtime compensation at the rate of one and one half times the regular rate for work performed in excess of forty (40) hours per week. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

25.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

26.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, counterpersons, cashiers and waiters) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

27.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of the Defendants. The hours assigned and worked, positions held and pay rates for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

28.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, because the facts on which the

calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

29. Plaintiffs' claims are typical of those clams that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failing to pay overtime compensation for hours worked in excess of forty (40) per workweek, (ii) failing to provide wage and hour notices at the date of hiring and annually as required by the NYLL and (iii) failing to provide wage statements as required by NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30. The Class further includes a subclass of tipped employees, including, but not limited to, waiters, servers, and counterpersons ("Tipped Subclass") who also number more than forty (40). Plaintiff MEJIA is a member of the Class and the Tipped Subclass. Plaintiff MEJIA and Tipped Subclass Members suffered as a result of Defendants' failure to pay them the proper minimum wage and Defendants' unlawful misappropriation of the tips that they earned. Plaintiff MEJIA and the Tipped Subclass members were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL. The tip credit asserted violated the NYLL because  Defendants (i) failed to provide adequate notice that a tip credit was being claimed, (ii) failed to record the tip credit allowance taken on periodic wage statements given to Plaintiff MEJIA and Tipped Subclass members, (iii) required Plaintiff MEJIA and Tipped Subclass members to spend two (2) hours, or twenty percent (20%) of each shift

engaged in non-tipped activities, and (iv) imposed a mandatory tip pool without first obtaining

consent for such tip pooling scheme from Plaintiff MEJIA or Tipped Subclass Members.

31.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have

no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced

and competent in both class litigation and employment litigation and have previously represented

plaintiffs in wage and hour cases.

32.     A class action is superior to other available methods for a fair and efficient

adjudication of the controversy – particularly in the context of the wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against

Defendants. Class action treatment will permit a large number of similarly situated persons to

prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender.

Because losses, injuries and damages suffered by each of the individual Class members are small

in the sense pertinent to a class action analysis, the expenses and burden of individual litigation

would make it extremely difficult or impossible for the individual Class members to redress the

wrongs done to them. On the other hand, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a great

expenditure of Court and public resources; however, treating the claims as a class action would

result in a significant saving of these costs. The prosecution of separate actions by individual

members of the Class would create a risk of inconsistent and/or varying adjudications with respect

to the individual members of the Class, establishing incompatible standards of conduct for

Defendants and resulting in the impairment of class members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.    Whether Defendants employed Plaintiffs and the Class within the meaning of the New York Labor Law;

    b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the type of work and labor for which Defendants did not pay the Class members properly;

    c.    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the Class members for their work;

    d.    Whether Defendants properly paid Plaintiffs and Class members overtime premium as required under the New York Labor Law;

    e.    Whether Defendants properly paid Plaintiffs and Class members spread-of-hours premium as required under the New York Labor Law;

    f.    Whether Defendants failed to pay Plaintiffs and the Class at or above the prevailing New York State Minimum Wage.

g.  Whether Defendants imposed a mandatory tip pool without first obtaining consent from Plaintiffs or Tipped Subclass members;

h.  Whether Defendants required Plaintiffs and Tipped Subclass Members to perform non-tipped work for more than two (2) hours, or twenty percent (20%) of each shift;

i.  Whether Defendants provided wage statements informing Plaintiffs and Class Members of the amount of tip allowance taken for each payment period;

j.  Whether Defendants provided Plaintiffs and Tipped Subclass Members proper tip credit notice in compliance with New York State Law.

k.  Whether Defendants provided to Plaintiffs and Class members proper wage and hour notices, at date of hiring and annually, as required by New York Labor Law; and

l.  Whether Defendants provided to Plaintiffs and Class members proper wage statements with each payment of wages as required by New York Labor Law.

## **STATEMENT OF FACTS**

### **PLAINTIFF ANGEL MOGOLLAN**

35.  In or around October 2016, Defendants hired Plaintiff MOGOLLAN to work as a cook at Defendants' business located at 75-02 Roosevelt Ave Jackson Heights, NY 11372. However, during his period of employment, Plaintiff MOGOLLAN was required to work at all of the La Abundancia Restaurant locations by Defendants on an as-needed basis. Similarly, FLSA Collective Plaintiffs and Class members all worked interchangeably at different restaurant locations as needed. Plaintiff MOGOLLAN's employment by Defendants concluded in or around October 2017.

36.     Throughout his employment, Defendants compensated Plaintiff MOGOLLAN in cash, at a regular hourly rate of $11.25.

37.     Plaintiff MOGOLLAN worked five (5) to six (6) days per week. He generally worked shifts between 9.5 hours to 10.5 hours in duration, for a total of approximately 55-65 hours per week.

**PLAINTIFF ALBA MARIA MEJIA**

38.     In or around September 2011, Defendants hired Plaintiff MEJIA to work as a counterperson and waitress at Defendants' business located at 75-02 Roosevelt Ave Jackson Heights, NY 11372. However, during her period of employment, Plaintiff MEJIA was required to work at all of the La Abundancia Restaurant locations by Defendants on an as-needed basis. Similarly, FLSA Collective Plaintiffs and Class members all worked interchangeably at different restaurant locations as needed. Plaintiff MEJIA's employment by Defendants concluded in or around March 2016.

39.     From the beginning of her employment until October 2015, Defendants compensated Plaintiff MEJIA in cash, at a regular hourly rate of $7.50. From October 2015 until the end of her employment in or around March 2016, Defendants compensated Plaintiff MEJIA in cash at a regular rate of $8.13 per hour

40.     Plaintiff MEJIA worked five (5) to six (6) shifts per week, each of which lasted between 8.5 hours to 9.5 hours in duration, for a total of approximately 45-50 hours per week.

41.     Like both Plaintiffs, FLSA Collective Plaintiffs and Class members worked more than forty (40) hours per week on a regular basis. In addition, like Plaintiffs, FLSA Collective Plaintiffs and Class members worked shifts longer than 10 hours in duration on a frequent basis.

42.     During her employment by Defendants, from 2014 until the end of her employment period, Defendants asserted a tip credit against the wages of Plaintiff MEJIA and paid Plaintiff MEJIA at an invalid "tip credit" base hourly wage. Similarly, other Tipped Subclass members were compensated by Defendants at base hourly rates below the prevailing federal and/or state minimum wages. However, Defendants never met either the federal or New York State requirements to claim a tip credit against the wages of Plaintiff MEJIA or Tipped Subclass Members.

    a.  Plaintiff MEJIA and Tipped Subclass members did not receive any notices (written or otherwise) that Defendants were claiming a tip credit on tipped employees' compensation.  They were never informed in writing or orally that Defendants were claiming a tip credit allowance, and never received any notice of the amount of tip credit allowance taken for each payment period during their employment, or of the hourly rate of tip credit deduction.

    b.  Defendants failed to record the tip allowance deducted from compensation earned by Plaintiff MEJIA and the Tipped Subclass on the wage statements that they received. The wage statements issued to Plaintiff MEJIA and the Tipped Subclass also do not state the hourly rate of tip credit claimed.

    c.  Plaintiff MEJIA and Tipped Subclass members were required by Defendants' management to participate in an invalid "tip pooling" scheme. Plaintiff MEJIA and Tipped Subclass Members never agreed upon their tip allocation percentage, which was assigned by management and not agreed upon mutually among tipped employees.

14

    d.   Plaintiff MEJIA and the Tipped Subclass were required to spend more than two (2) hours or twenty percent (20%) of each shift engaged in non-tipped activities. Specifically, Plaintiff MEJIA and Tipped Subclass members were required to perform non-tipped tasks including, but not limited to: cleaning, taking out garbage, taking out tablecloths for cleaning, sweeping, mopping, washing dishes, taking receipt of and unloading supplies and storing them, for more than two (2) hours or twenty percent (20%) of each shift.

43.    Throughout both Plaintiffs' respective employment periods, Defendants failed to compensate Plaintiffs for regular and overtime hours worked, in violation of the FLSA and NYLL. Specifically:

    a.   During their respective employment periods, Defendants compensated Plaintiffs for working only 40 hours per work, even though Plaintiffs actually worked more than 40 hours. Defendants assumed that each shift worked by Plaintiffs lasted exactly 8 hours, and paid Plaintiffs for 8 hours per shift at their regular pay rates, even though, in reality, each shift lasted in excess of 8 hours

    b.   Due to Defendants' policy of arbitrarily paying employees for working only 40 hours, Plaintiffs were not paid at all for those hours in excess of 40 that they routinely worked. Likewise, FLSA Collective Plaintiffs and Class Members were compensated for working 40 hours per workweek, and were not paid at all for those hours worked in excess of 40.

    c.   In addition, during those weeks that Plaintiffs were compensated at all for those hours in excess of 40, they were not compensated at the proper overtime premium rate for such hours. Rather, during such weeks, Plaintiffs were compensated at their

regular hourly pay rate for all working hours, even for hours exceeding 40 per workweek for which pay at an overtime premium rate of 1.5 times the regular rate was required, in violation of the FLSA and NYLL. Similarly, FLSA Collective Plaintiffs and Class Members were paid at their regular pay rates for all hours worked, even for overtime hours for which they were required to be paid at a premium rate.

d. Due to the policies described above, Plaintiff MOGOLLAN suffered approximately 10-20 unpaid regular and overtime hours per week and Plaintiff MEJIA suffered around 5-10 unpaid regular and overtime hours per week. Likewise, due to the same policies, FLSA Collective Plaintiffs and Class Members suffered at least 5-10 unpaid regular and overtime hours, if not more.

44.     Although Plaintiffs frequently worked shifts exceeding 10 hours in duration during his employment by Defendants, Defendants never paid them spread-of-hours premium for working such shifts as required under the NYLL. Likewise, Class Members worked shifts exceeding 10 hours in duration, but were not paid spread-of-hours premium for working such shifts, in violation of the NYLL.

45.     Plaintiff never received any wage-and-hour notices or wage statements during their employment by Defendants, in violation of the NYLL. Likewise, Class Members were never provided any wage-and-hour notices or wage statements, despite the NYLL's requirements that such documents be provided to non-exempt employees.

46.     Defendants unlawfully failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class members either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) for hours they worked in excess of forty (40) each week.

47.     Defendants unlawfully failed to pay Plaintiffs and Class Members spread-of-hours premium for working shifts exceeding 10 hours in duration, in violation of the NYLL.

48.     At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with wage and hour notices as required by the NYLL.

49.     At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with wage statements, as required by the NYLL, as Defendants failed to accurately maintain records of hours worked.

50.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

51.     Plaintiffs reallege and reaver by reference all allegations in the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

52.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a), or, alternatively, properly before the Court under a theory of pendent party jurisdiction.

53.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

54.     At all relevant times, Defendants had gross annual revenues in excess of $500,000.00.

55.     Defendants willfully violated Plaintiff MEJIA's and Tipped Subclass members' rights by failing to pay the prevailing New York State minimum wage.

56.     At all relevant times, the Defendants also engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

57.     Records concerning the number of hours worked by and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

58.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

59.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

60.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages plus an equal amount as liquidated damages.

61.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS

62.     Plaintiffs reallege and reaver by reference all allegations in the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

63.     At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §2 and 651.

64.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

65.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them compensation for all hours worked;

66.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them spread-of-hours premium for working shifts exceeding 10 hours in duration.

67.     Defendants failed to provide Plaintiffs and Class members wage and hour notice, at the date of hiring and as legally required thereafter, in direct violation of the New York Labor Law.

68.     Defendants failed to provide Plaintiffs and Class members with wage statements with every payment as required by New York Labor Law § 195(3).

69.     Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime wages, unpaid spread of hours premium, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

19

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid minimum wages due under the New York Labor Law;

d.  An award of unpaid overtime compensation due under the FLSA and the NYLL;

e.  An award of unpaid spread-of-hours premium due under the NYLL;

f.  An award of liquidated and/or punitive damages due to Defendants' willful failure to pay overtime compensation for all hours worked, pursuant to 29 U.S.C. § 216;

g.  Am award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay regular and overtime compensation pursuant to the New York Labor law;

h.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

i.  An award of statutory penalties, prejudgment and post judgment interest, and costs and expenses of this action together with reasonable attorneys' and expert fees;

j.  Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiffs as Representative of the Class; and

m.  Such other and further relief as this Court deems just and proper.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: September 10, 2019

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

By: */s/ C.K. Lee*
     C.K. Lee, Esq.