UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mogollan et al.

         Plaintiffs,

-against-

La Abundancia Bakery & Restaurant Inc. et al.,

         Defendants.

1:18-cv-03202 (GBD) (SDA)

**OPINON AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Presently before the Court is a renewed motion by Plaintiffs, pursuant to 29 U.S.C. § 216(b), for conditional collective certification (Pl. Mot., ECF No. 129), and a renewed motion for class discovery (9/10/19 Letter Motion, ECF No. 114). For the reasons set forth below, Plaintiffs' motions are GRANTED.

## BACKGROUND

### I. Prior Procedural History

Plaintiff Angel Mogollan ("Mogollan") filed this putative class and collective action on April 12, 2018 against defendants La Abundancia Bakery & Restaurant Inc.; 63-12 La Abundancia Inc. ("La Abundancia #1"); 75-02 La Abundancia Bakery and Restaurant Corp. ("La Abundancia #2"); 81-16 La Abundancia Inc. ("La Abundancia #3"); 37-01 La Abundancia Inc. ("La Abundancia #4"); 94-19 La Abundancia Inc. ("La Abundancia #5"); 88-26 La Abundancia Inc. ("La Abundancia #6"); Monica Ferrerosa ("Ferrerosa"); and Ruben Rojas ("Rojas") (collectively, "Defendants"), asserting claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law for unpaid overtime and minimum wages. It is alleged that Defendants operated a "single integrated

enterprise" under the trade name "La Abundancia" at six locations: La Abundancia #1 at 63-10 Broadway Ave., Woodside, NY 11377; La Abundancia #2 at 75-02 Roosevelt Ave., Jackson Heights, NY 11372; La Abundancia #3 at 81-16 Roosevelt Ave., Jackson Heights, NY 11372; La Abundancia #4 at 37-01 Junction Blvd., Corona, NY 11368; La Abundancia #5 at 94-19 Roosevelt Ave., Jackson Heights, NY 11372; and La Abundancia #6 at 88-28 37th Ave., Jackson Heights, NY 11372. (Am. Compl., ECF No. 40, ¶¶ 6, 14.) The Amended Complaint alleged that Rojas is the president and owner of all the restaurants and that Ferrerosa is a senior managerial official of all the restaurants. (*Id*. ¶ 14.)

The Amended Complaint further alleged that Mogollan worked as a cook at La Abundancia #2 from October 2016 through October 2017, but that he was required to work at all the other La Abundancia restaurant locations "on an as-needed basis." (Am. Compl., ECF No. 40, ¶ 30.) Mogollan alleged that he was not paid regular and overtime wages, that he was not paid any of the spread-of-hours premiums to which he was entitled and that he was not provided with wage notices or wage statements. (*Id.* ¶¶ 32-39.)

Mogollan sought to bring his FLSA claims as a collective action on behalf of all non-exempt employees employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "FLSA Collective Plaintiffs"). (Am. Compl. ¶ 19.) Mogollan alleged that he and the other FLSA Collective Plaintiffs "are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation at the rate of one and one half times the regular rate for work performed in excess of forty (40) hours per week."

2

(*Id*. ¶ 20.)

On December 18, 2018, Mogollan filed a motion for conditional collective certification on behalf of all non-exempt employees employed by Defendants between April 12, 2012 and the present at their six La Abundancia locations. (12/18/18 Mot., ECF No. 50.) This Court granted Mogollan's motion in part and denied it in part. *Mogollan v. La Abundancia Bakery & Rest. Inc.*, 2019 WL 1512714, at *5 (S.D.N.Y. Apr. 8, 2019). The Court conditionally certified a class of all non-exempt employees employed by La Abundancia #2 on or after April 12, 2012. *Id*. The Court held that "Plaintiff ha[d] met his 'modest factual showing' that there [were] similarly situated employees who worked at La Abundancia #2, which is the location where Plaintiff worked as a cook," but "that the record with respect to the other five locations where Plaintiff purportedly worked on an 'as needed' basis [was] not sufficient to grant conditional certification as to the other locations." *Id*. With respect to the other locations, the Court held that Mogollan could take the depositions of the persons whose declarations and affidavits were submitted in opposition to the certification motion so that he could renew his motion as to the other locations at a later time. *See id*.

On April 23, 2019, Mogollan asserted objections to this Court's Opinion and Order. (Objections, ECF No. 86.) On June 12, 2019, District Judge Daniels overruled the objections. (6/12/19 Order, ECF No. 93.)

## II. Procedural History Since Prior Conditional Collective Certification Motion

Three plaintiffs filed consents to sue after the Court's rulings on conditional collective certification. On June 28, 2019, Alba Maria Mejia ("Mejia") filed a consent to sue under the FLSA. (Mejia Consent, ECF No. 98.) On September 17, 2019, Hector De La Rosa Villares ("Villares") filed

3

a consent to sue. (Villares Consent, ECF No. 120.) On September 20, 2019, Nidia Perdomo ("Perdomo") filed a consent to sue. (Perdomo Consent, ECF No. 126.)

On September 10, 2019, Plaintiffs filed a Second Amended Complaint ("SAC"). (SAC, ECF No. 110.) The SAC added a seventh La Abundancia entity as a defendant, 153-40 La Abundancia, Inc. at 153-40 Hillside Ave., Jamaica, NY 11432 ("La Abundancia #7"). (SAC ¶ 7(g).) The SAC also added as defendants M. Arroyave Food Corp. and V. Rojas Food Corp., which are the current operating entities for La Abundancia #3 and #4. (*See* SAC ¶¶ 12, 14.)

On September 22, 2019, Plaintiffs filed their renewed motion for conditional collective certification.[1] In support of their motion, Plaintiffs submitted, among other things, transcripts of the deposition of Rojas (Rojas Tr., ECF No. 130-1, at 2-46), Maximo Carmen Inosencio ("Inosencio")[2] (Inosencio Tr., ECF No. 130-1, at 48-57), Maria Victoria Barreto ("Barreto") (Barreto Tr., ECF No. 130-1, at 59-72), Adriana Rengifo (Rengifo Tr., ECF No. 130-1, at 74-84), Aracelly Cifuentes (Cifuentes Tr., ECF No. 130-1, at 87-94) and Wilman Sanchez (Sanchez Tr., ECF No. 130-1, at 95-103). Plaintiffs also submitted Declarations of Mejia (Mejia Decl., ECF No. 131) and Villares (Villares Decl., ECF No. 132).

### III. Motion For Class Discovery

Plaintiffs previously had filed a Letter Motion for class discovery on March 11, 2019. (3/11/19 Letter Motion, ECF No. 68.) In a prior Order, this Court had limited the class discovery

---

[1] On September 20, 2019, Plaintiffs had filed a renewed motion (ECF No. 123) that was not supported by a memorandum of law, such that the Court denied such motion without prejudice on September 21, 2019 (ECF No. 128).

[2] Inosencio is the same individual for whom Defendants submitted an affidavit (ECF No. 60-3) in opposition to the prior conditional collective certification motion under the name "Maximino Torralba." (*See* 9/22/19 Pl. Mem., ECF No. 130, at 2 n.1.)

that had been sought to La Abundancia #2 based upon its prior Opinion and Order on conditional collective certification. (*See* 4/10/19 Order, ECF No. 80.) Plaintiffs now in their renewed motion are seeking to expand the scope of class discovery to all La Abundancia restaurant locations. (9/10/19 Letter Motion at 1.)

**DISCUSSION**

I. **Legal Standards**

A. **Standards Regarding Conditional Collective Certification**

The Court refers to its prior Opinion and Order in this case regarding the general legal standards under Section 216(b) of the FLSA. *See Mogollan*, 2019 WL 1512714, at *4. Since Plaintiffs are renewing their motion for conditional collective certification, this case still is at the first step of the "two-step process" endorsed by the Second Circuit for approval of an FLSA collective action.[3] Plaintiffs are seeking to expand the conditional collective certification from employees who work at La Abundancia #2 to all La Abundancia restaurant locations. (9/22/19 Pl. Mem. at 3.) Thus, the threshold issue in deciding whether to authorize class notice in this FLSA action is whether Plaintiffs have demonstrated that employees across all La Abundancia restaurant locations are "similarly situated." *See Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)).

Plaintiffs argue that all the La Abundancia restaurant locations operate as a single

---

[3] "At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. . . . At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citation omitted).

5

integrated enterprise. (9/22/19 Pl. Mem. at 3-10.)

> [T]he "single integrated enterprise" test [is a test] that numerous district courts have used to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes. . . . Under this standard, courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

*Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (citations omitted). Importantly, at this conditional certification stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Juarez*, 29 F. Supp. 3d at 369-70 (citing *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).

### B. Standards Regarding Equitable Tolling

Plaintiffs request equitable tolling of the statute of limitations. (9/22/19 Pl. Mem. at 20-21 n.5.) Chief Magistrate Judge Gorenstein well summarized the law of equitable tolling as follows:

> The doctrine of equitable tolling allows a court to extend a statute of limitations "on a case-by-case basis to prevent inequity." . . . "Equitable tolling applies as a matter of fairness where a party has been prevented in some extraordinary way from exercising his rights." . . .
>
> The Supreme Court has made clear, however, that the conditions for applying the doctrine are strict. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." . . . The second prong of the equitable tolling test "is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." . . .
>
> The Second Circuit has repeatedly cautioned that "equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." . . . Thus, "[w]hen a movant does not provide any grounds showing equitable tolling may be appropriate, it will not be applied." . . .

*Contrera v. Langer*, 278 F. Supp. 3d 702, 723 (S.D.N.Y. 2017) (citations omitted and brackets in original).

In FLSA cases where conditional certification is granted, "[b]ecause the statute of limitations runs for each individual plaintiff until he consents to join the action, courts generally permit plaintiffs to send notice to those employed during the three year period prior to the date of the Order or to the mailing of the notice." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011). However, where plaintiffs allege that equitable tolling may extend the statute of limitations for certain prospective plaintiffs, it may be appropriate for notice to be sent to the larger class of prospective members, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date. *See Pettenato v. Beacon Health Options, Inc.*, No. 19-CV-01646 (JPO) (BCM), 2019 WL 5587335, at *12 (S.D.N.Y. Oct. 25, 2019) ("because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to an earlier date, such as 'the date of the motion to certify'"(citations omitted)); *see also Kemper v. Westbury Operating Corp.*, No. 12-CV-00895, 2012 WL 4976122, at *4 (E.D.N.Y. Oct. 17, 2012) ("[P]laintiff's request to notify individuals who were employed three years from the date plaintiff filed this motion, rather than from the date of the mailing of the notice, is granted.").

### C. Standards Regarding Class Discovery

Plaintiffs seek discovery in anticipation of filing their motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. (9/10/19 Letter Motion at 1-4.) Magistrate Judge Cott has articulated the legal standards regarding such discovery as follows:

> "Pre-certification discovery is often necessary in order to provide the court with sufficient information to determine whether certification is appropriate" in light

of the requirements set out in Rule 23. . . .

> Discovery permitted for this purpose "must be sufficiently broad in order that the plaintiffs have a realistic opportunity to meet [the Rule 23(a)] requirements," while ensuring that defendants are "protected from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas." . . . Such discovery, however, must generally stop short of the merits of the class claims. . . .

*Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 490-91 (S.D.N.Y. 2016) (citations omitted).

## II. Application

### A. Conditional Collective Certification

Based upon the sworn testimony submitted by Plaintiffs, which they gathered since the Court's prior Opinion and Order on conditional certification, the Court hereby grants Plaintiffs' renewed motion for conditional certification. The Court finds that Plaintiffs now have met their "modest factual showing" that there are similarly situated employees who worked at all the La Abundancia locations. *See Mogollan*, 2019 WL 1512714, at *4.

#### 1. An Adequate Showing Has Been Made Of A "Single Integrated Enterprise"

Since the Court previously had limited conditional collective certification to a single La Abundancia location, it is appropriate for the Court to consider the new evidence submitted by Plaintiffs regarding Plaintiffs' assertion that the various La Abundancia locations effectively operate as a single enterprise. Application of the four "single integrated enterprise" factors leads the Court to conclude that Plaintiff has sufficiently established, for collective certification purposes, that Defendants acted as a single integrated enterprise.

##### a. Interrelation Of Operations

All the La Abundancia locations are "engaged in the same business." (Rojas Tr. at 38 (ECF

No. 130-1 at 12).)[4] Employees worked at multiple La Abundancia locations on an as needed basis. (Mejia Decl. ¶ 5; Villares Decl. ¶ 5; Inosencio Tr. at 8 (ECF No. 130-1 at 50).) Defendant Rojas testified that employees "sometimes" worked between and among different La Abundancia locations. (Rojas Tr. at 38 (ECF No. 130-1 at 12).) Managers also were rotated among the La Abundancia locations on an as needed basis. (Mejia Decl. ¶ 6; Villares Decl. ¶ 6.) In addition, goods and supplies were used interchangeably among the different locations. (Mejia Decl. ¶ 6; Villares Decl. ¶ 6; Rojas Tr. at 11 (ECF No. 130-1 at 5).)

### b. **Common Management**

The La Abundancia locations are administered from a head office where Rojas works. (*See* Rojas Tr. at 6 (ECF No. 130-1 at 4).) La Abundancia managers were appointed to their positions by Rojas and reported to him on the operation of all the La Abundancia locations. (*See id*. at 30, 34 (ECF No. 130-1 at 10-11).) Rojas maintains oversight over all the La Abundancia locations. (*See id*. at 45 (ECF No. 130-1 at 13).)

As General Manager Coordinator of La Abundancia, Sanchez "coordinate[s] all the managers for each and every bakery." (Sanchez Tr. at 6 (ECF No. 130-1 at 97).) In this capacity, he visits all stores to check up on operations. (*See* Rojas Tr. at 26 (ECF No. 130-1 at 11).) Cifuentes, while employed as General Manager of the La Abundancia stores, visited all store locations to "make sure everything [was] running well." (Cifuentes Tr. at 8 (ECF No. 130-1 at 89).)

---

[4] Plaintiffs submitted as a single Exhibit A (ECF No. 130-1) to their moving memorandum all the relevant deposition transcripts. In the Procedural History section of this Opinion and Order, the Court cites to the page ranges within ECF No. 130-1 where each particular transcript is located. In this section of the Opinion and Order, the Court cites the particular transcript page number (followed in parentheses by the page number in ECF No. 130-1 where the transcript page is located).

### c. Common Ownership Or Financial Control

The corporate Defendants and the La Abundancia locations operated through entities are owned by Ruben Rojas and/or his family members. La Abundancia #1 is owned 100% by Rojas. (Rojas Tr. at 12-13 (ECF No. 130-1 at 5).) La Abundancia #2 is owned 50% by Rojas and 50% by his brother-in-law, Vladimir Wallis ("Wallis"). (*Id*.) M. Arroyave Food Corp. (the current operating entity for La Abundancia #3) is owned 100% by Rojas's wife. (*See id*. at Tr. 16-17 (ECF No. 130-1 at 6).) V. Rojas Food Corp. (the current operating entity for La Abundancia #4) is owned 100% by Rojas's daughter. (*See id*. at 17 (ECF No. 130-1 at 6).) La Abundancia # 5 is owned 50% by Rojas and 50% by his sister, Maria Rojas Cardonas. (*Id*. at 13-14 (ECF No. 130-1 at 6).) La Abundancia #6 was owned 50% by Rojas and 50% by his brother-in-law, Wallis until its sale in 2018. (*Id*. at 18-19 (ECF No. 130-1 at 7).) La Abundancia #7 is owned 100% by Rojas. (*Id*. at 16 (ECF No. 130-1 at 6).)

All the La Abundancia locations use the same bank, the Bank of Hope. (Rojas Tr. at 108 (ECF No. 130-1 at 29).) All also use the same accountant, Jairo Jimenez. (*Id*. at 108-09 (ECF No. 130-1 at 29).) In addition, Rojas previously entered into an FLSA settlement on behalf of the operating entities for all La Abundancia locations. (*See id*. at 49-50 (ECF No. 130-1 at 14-15).)

### d. Centralized Control Of Labor Relations

A "handbook" setting forth job duties for various job positions is distributed to new La Abundancia employees across locations. (*See* Rojas Tr. at 105-06 (ECF No. 130-1 at 28-29).) The same methods of tracking working time is utilized across all La Abundancia locations. (*See id*. at 78-79 (ECF No. 130-1 at 22).) Payroll for all La Abundancia locations is processed at the La Abundancia administrative office. (*See id*. at 23-25 (ECF No. 130-1 at 8).) All employee paychecks

are in the same form and come from the La Abundancia administrative office. (*Id*. at 42 (ECF No. 130-1 at 13)).

Rojas has discretion to hire or fire any employee of any La Abundancia location or instruct managers to do so on his behalf. (*See* Rojas Tr. at 31 (ECF No. 130-1 at 10)). Rojas has discretion to authorize raises for non-exempt and managerial La Abundancia employees, as well as vacation days. (*Id*. at 32-33 (ECF No. 130-1 at 10)). When La Abundancia managers are unable to answer questions from employees relating to compensation, such questions are referred to more senior managers and then, if the senior managers are not able to answer them, to Rojas. (*Id*. at 40 (ECF No. 130-1 at 12)).

Based upon the foregoing, the Court concludes that Plaintiffs adequately have established, for purposes of conditional collective certification, that the seven La Abundancia locations at issue in this case, through the relevant corporate operating entities, constitute a "single integrated enterprise."[5]

### 2. **An Adequate Showing Has Been Made That Employees Across All La Abundancia Locations Are Similarly Situated**

Two employees who previously submitted affidavits in this case in support of Defendants' position, Inosencio and Barreto, provided deposition testimony suggesting that they suffered from the same FLSA overtime violations alleged by Plaintiffs. Inosencio testified at his deposition that, during his tenure as a non-exempt cook at La Abundancia, he usually worked five shifts per

---

[5] The Court has reviewed the Declaration filed by Rojas in opposition to Plaintiffs' renewed motion for conditional collective certification. (Rojas 10/16/19 Decl., ECF No. 136.) In that Declaration, he seeks to rebut certain facts as to whether the various La Abundancia locations operate as a single enterprise. (*See id*. ¶¶ 2-3.) However, at this conditional collective certification phase of the case, the Court will not resolve any factual disputes regarding the existence of a single enterprise. *See Juarez*, 29 F. Supp. 3d at 369-70.

week, and received the same fixed wage of $120 for each 8-hour long shift, which is equivalent to $15 per hour. (*See* Inosencio Tr. at 16 (ECF No. 130-1 at 52).) However, although this amount covered only his regular eight-hour shift (2PM until 10 PM), Inosencio testified that he was required to work in excess of his scheduled shift on occasion. (*See id*.) Thus, for those workweeks during which Inosencio was required to work past 10 PM, the time that his shift was scheduled to terminate, it appears that he may have been deprived of overtime in violation of the FLSA.

Barreto testified that she worked as a waitress at multiple La Abundancia locations. (*See* Barreto Tr. at 20-21 (ECF No. 130-1 at 64); *see also* Barreto Aff. ¶ 3.) Barreto testified that she was paid $8.75 an hour for her eight-hour shift (2 PM until 10 PM), but was required to work prior to each scheduled shift without compensation, as were other co-workers of hers at La Abundancia. (Barreto Tr. at 12 (ECF No. 130-1 at 62).) Barreto was paid 40 hours per week at her regular pay rate during her employment at La Abundancia. (*See id*. at 9 (ECF No. 130-1 at 61).) Thus, it appears that she was not compensated for her pre-shift work.

The testimony of Inosencio and Barreto is consistent with the testimony of Plaintiff Mejia and opt-in Plaintiffs Villares and Perdomo that is set forth in their Declarations regarding the failure to pay overtime. (Mejia Decl. ¶¶ 7-10; Villares Decl. ¶¶ 7-10; Perdomo Decl., ECF No. 146, ¶¶ 4-6.) This testimony also is consistent with the allegations contained in the SAC regarding Mogollan and Mejia. (SAC ¶¶ 35-44.)

In opposition to conditional collective certification, Defendants submit numerous declarations that take issue with sworn statements submitted by Plaintiffs. They submit a declaration of Rojas in which, among other things, he asserts that there is "doubt whether any of the proposed representatives actually worked any significant overtime." (Rojas 10/16/19 Decl. ¶

6.) Defendants also submit declarations of employees who they assert are La Abundancia employees identified in Plaintiffs' submissions. (*See id*. ¶¶ 6-7.) These employees contradict the sworn statements provided by Mejia and Villares. (*See* Hernandez Decl., ECF No. 136-2, ¶¶ 4-5; Cifuentes Decl., ECF No. 136-3, ¶¶ 5-6; J. de la Cruz Decl., ECF No. 136-4, ¶ 3; M. de la Cruz, ECF No. 136-5, ¶ 3; Orjuela Decl., ECF No. 136-6, ¶¶ 4-5.)[6] However, at this stage of the proceedings, it is not incumbent on the Court to resolve disputes or make credibility determinations. *See Juarez*, 29 F. Supp. 3d at 369-70. Thus, "Defendants . . . may not defeat a court's determination that [p]laintiffs are similarly situated by submitting their own affidavits." *Colon v. Major Perry Street Corp.*, No. 12-CV-03788, 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013).

Based upon Plaintiffs' new submissions, Plaintiffs have made the "modest factual showing" of a nexus uniting them with employees at all La Abundancia locations. *See Mogollan*, 2019 WL 1512714, at *4. Accordingly, the Court grants conditional certification of a class of all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, delivery persons, counterpersons, helpers and wait staff) employed at all La Abundancia locations on or after the date that is six (6) years before the filing of the Complaint, *i.e.*, April 12, 2012. Defendants will have an opportunity following discovery to move to de-certify the collective action if a fuller record reveals that those who opt in to the action are not similarly situated to the Plaintiffs.

---

[6] Defendants also submit a declaration from an employee, Loaiza, but that declaration is not translated into English. (*See* Loaiza Decl., ECF No. 136-1.)

B. **Equitable Tolling And Notice**

As part of their motion, Plaintiffs seek equitable tolling of the statute of limitations. (9/22/19 Pl. Mem. at 20-21 n.5.) The Court previously denied the request for equitable tolling because the Court had "no basis for making a ruling at [that] time that any current or future opt-in employees' claims must be equitably tolled given that there has been no showing that they have met the 'diligence' prong of the equitable tolling doctrine." *Mogollan*, 2019 WL 1512714, at *5 (citing *Contrera*, 278 F. Supp. 3d at 725). It continues to be the case that the Court cannot determine whether equitable tolling principles may be applied to any individual plaintiff. Nevertheless, the Court finds that it is appropriate for Plaintiffs to include in their notice all potential collective action members employed at the various La Abundancia locations since December 18, 2015, three years before the first motion for conditional collective certification was filed, with the understanding that Defendants may challenge the timeliness of individual plaintiffs' claims in the future. *See Pettenato*, 2019 WL 5587335, at *12.

C. **Class Discovery**

Plaintiffs' request for discovery prior to filing their motion for class certification under Rule 23 of the Federal Rules of Civil Procedure is granted. Now that the Court has expanded FLSA conditional certification to all La Abundancia locations, it is appropriate for Plaintiffs to obtain discovery as to all La Abundancia locations, not just La Abundancia #2. Thus, Defendants shall produce to Plaintiffs the following documents for all non-exempt employees of Defendants after April 12, 2012, across all of Defendants' La Abundancia locations: payroll records, time records, wage-and-hour notices, wage statements, tip credit notices and tip records.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' renewed motion for conditional certification is GRANTED. The Court conditionally certifies a class of all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, delivery persons, counterpersons, helpers and wait staff) employed by each of the La Abundancia locations on or after April 12, 2012. The parties shall meet and confer as to the form of notice to be distributed and shall refer any disputes between the parties regarding the notice to the Court. The form of notice and any disputes relating thereto shall be submitted within seven days of the date of this Opinion and Order.

In addition, Plaintiffs' renewed Letter Motion for class discovery is GRANTED. Defendants shall produce to Plaintiffs within 30 days the following documents for all non-exempt employees of Defendants after April 12, 2012, across all of Defendants' La Abundancia locations: payroll records, time records, wage-and-hour notices, wage statements, tip credit notices and tip records.

Finally, within seven days of the date of this Opinion and Order, the parties shall jointly submit a proposed schedule for the completion of fact discovery.

**SO ORDERED.**

DATED: New York, New York
November 4, 2019

_____
STEWART D. AARON
United States Magistrate Judge