UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGEL MOGOLLAN et al.,

Plaintiffs,

-against-

LA ABUNDANCIA BAKERY & RESTAURANT INC. et al.,

Defendants.

**DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS**

18-CV-3202

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Defendants La Abundancia Bakery and Restaurant Inc. (La Abundancia Inc.), 63-12 La Abundancia Inc. ("63-12 Inc."), 75-02 La Abundancia Bakery and Restaurant Corp. ("75-02 Corp."), 81-16 La Abundancia Inc. ("81-16 Inc.")., M. Arroyave Food Corp. ("Arroyave"), 37-01 La Abundancia Inc. ("37-01 Inc."), V. Rojas Food Corp ("V. Rojas"), 94-19 La Abundancia Inc. ("94-19 Inc."), 153-40 La Abundancia Inc. ("153-40 Inc."), 88-26 La Abundancia Inc. ("88-26 Inc."), Monica Ferrerosa, and Ruben Rojas, by their undersigned attorneys, in support of their motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure for decertification pursuant to Section 216(b) of the Fair Labor Standard Act, submit the following Statement of Material Facts:[1]

[1] Except where otherwise noted, the description of facts as set forth herein applies to all relevant times.

### *Defendants*

1. Defendant La Abundancia Inc. was a bakery and restaurant located at 63-10 Broadway, Woodside, New York 11377. *See* the Declaration of Ruben Rojas ("Rojas Decl.," attached as **Exhibit A**) at ¶ 6.

2. Defendant, 63-12 Inc. is a bakery and restaurant located at 63-10 Broadway Ave., Woodside, New York 11377. *See* Exh. A (Rojas Decl.) at ¶ 7.

3. Defendant, 75-02 Corp., is a bakery and restaurant located at 75- 02 Roosevelt Ave., Jackson Heights, New York 11372. *See* Exh. A (Rojas Decl.) at ¶ 8.

4. Defendant, 81-16 Inc., was a bakery and restaurant located at 81-16 Roosevelt Ave, Jackson Heights, New York 11372. *See* Exh. A (Rojas Decl.) at ¶ 9.

5. Defendant, 37-01 Inc., was a bakery and restaurant located at 37-01 Junction Blvd., Corona, New York 11368. *See* Exh. A (Rojas Decl.) at ¶ 10.

6. Defendant, 88-26 Inc., was a bakery and restaurant located at 88-28 37th Ave., Jackson Heights, New York. *See* Exh. A (Rojas Decl.) at ¶ 11.

7. Defendant, Arroyave, is a bakery and restaurant located at 81-16 Roosevelt Ave, Jackson Heights, New York 11372. *See* Exh. A (Rojas Decl.) at ¶ 12.

8. Defendant, V. Rojas., is a bakery and restaurant located at 37-01 Junction Blvd., Corona, New York 11368. *See* Exh. A (Rojas Decl.) at ¶ 13.

9. Defendant, 94-19 Inc is a bakery and restaurant located at 94-19 Roosevelt Ave, Jackson Heights, New York 11372. *See* Exh. A (Rojas Decl.) at ¶ 14.

10. Defendant, 153-40 Inc., is a bakery and restaurant located at 153-40 Hillside Avenue, Jamaica, New York 11432. *See* Exh. A (Rojas Decl.) at ¶ 15.

11. Defendant Ruben Rojas is the 100 percent shareholder of Defendant 63-12 Inc., which owns and operates the restaurant located at 63-10 Broadway Avenue, Woodside, New York 11377, and Defendant 153-40 Inc., which owns and operates the restaurant located at 153-40 Parsons Boulevard, Jamaica, New York 11432. *See* Deposition of Ruben Rojas ("Rojas Dep.," attached as **Exhibit B**) at 12-13:25-4, 15-16:20-4.

12. Mr. Rojas is a 50 percent shareholder with Vladimir Wallace, who is a 50 percent shareholder of Defendant 75-02 Corp, which owns and operates the restaurant located at 75- 02 Roosevelt Avenue, Jackson Heights, New York 11372. *See* Exh. B (Rojas Dep.) at 12:15-24, 13:10-17.

13. Mr. Rojas is a 50 percent shareholder with Maria Rojas Cardona who is a 50 percent shareholder of Defendant 94-19 Inc. which owns and operates the restaurant located at 94-19 Roosevelt Ave, Jackson Heights, New York 11372. *See* Exh. B (Rojas Dep.) at 13:8-9, 13-14:21-7.

14. Martha Lucia Arroyave Rojas is the 100 percent shareholder of Defendant Arroyave, which owns and operates the restaurant located at 81-16 Roosevelt Avenue, Jackson Heights, New York 11372. *See* Exh. B (Rojas Dep.) at 16:8-12.

15. Valeria Rojas is the 100 percent shareholder of Defendant V. Rojas, which owns and operates the restaurant located at 37-01 Junction Boulevard, Corona, New York 11368. *See* Exh. B (Rojas Dep.) at 17:12-17.

16. Mr. Rojas managed the Defendant 63-12 Inc. *See* Exh. B (Rojas Dep.)

at 27:6-9.

17. Mr. Rojas hired one restaurant manager for each of the following Defendants: 75-02 Corp, 81-16 Inc., Arroyave, 37-01 Inc., V. Rojas, 94-19 Inc., 153-40 Inc., and 88-26 Inc. *See* Exh. B (Rojas Dep.) at 26-27:22-5.

18. Before on or about June 2018, Mr. Rojas was appointed the General Manager by the Defendant restaurants' shareholders and all the restaurant managers reported to him. On or about June 2018, and at all relevant time thereafter, Mr. Rojas hired General Manager Wilman Sanchez and thereafter all the restaurant managers reported to him. *See* Exh. B (Rojas Dep.) at 34-35:13-7. *See* Deposition of Wilman Sanchez ("Sanchez Dep.," attached as **Exhibit C**) at 8:3-4.

19. The Defendant 75-02 Corp was managed by Reynaldo Carbajal and before him by Aracely Cifuentes. *See* Exh. B (Rojas Dep.) at 27:10-19.

20. The Defendants 81-16 Inc. and Arroyave, which at different times owned and operated the same restaurant, were managed by Luz Marina Gamboa. *See* Exh. B (Rojas Dep.) at 28:4-11

21. The Defendants 37-01 Inc. and V. Rojas, which at different times owned and operated the same restaurant, were managed by Marcella Cifuente. *See* Exh. B (Rojas Dep.) at 30:8-11.

22. The Defendant 153-40 Inc. was managed by Aracely Cifuente. *See* Exh. B (Rojas Dep.) at 29:7-19.

23. Each restaurant manager for each Defendant had the power to hire

and fire all employees in the restaurant she or he managed. *See* Exh. B (Rojas Dep.) at 30:22-25.

24. Each restaurant manager for each Defendant separately determined the compensation paid to employees in the restaurant she or he managed. *See* Exh. C (Sanchez Dep.) at 8:8-15.

25. Defendant restaurants withheld and deducted taxes on payroll payments. *See* Exh. A (Rojas Decl.) at ¶ 49, Exh. 13 at 81-16 INC – 000136.

26. Monica Arango provided bookkeeping and accounts payable services for three Defendants and was compensated by the following Defendants: 75-02 Corp, 63-12 Inc., 88-26 Inc., and V. Rojas. *See* Exh. A (Rojas Decl.) at ¶ 21

27. Veronica Guirrajo provided bookkeeping and accounts payable services for three Defendants and was compensated by the following Defendants: Arroyave, 94-19 Inc and 153-40 Inc. *See* Exh. A (Rojas Decl.) at ¶ 22

28. The practice was that employees from each of the defendant restaurants would direct all questions regarding their compensation to the appropriate Defendant's restaurant manager. If further clarification was required, managers would refer employees to Monica Arrango or Veronica Guirrajo, depending upon which Defendant they worked for. *See* Exh. B (Rojas Dep.) at 40:11-14. *See* Exh. C (Sanchez Dep.) at 8:8-15.

29. Each of the Defendant employers, as a practice, does not suffer or permit uncompensated work. As reflected in the attached time sheets, each of the Defendant employers had established procedures for employees to record their

time, asked employees to certify the accuracy of the time they submitted, and paid employees for all time so reported and certified. If any of the Plaintiffs were not complying with established procedures, then the Defendant employers were not aware of their non-compliance. *See* Exh. A (Rojas Decl.) at ¶ 23

***Plaintiff Angel Mogollan***

30. Plaintiff Mogollan is familiar with the federal and state wage posters and laws as he has seen them in when working for various of the Corporate Defendants. *See* Exh. A (Rojas Decl.) at ¶ 17.

31. Plaintiff Angel Mogollan was employed as baker (hornero) by Defendant 75-02 Corp from on or about October 2016, until on or about October 2017. *See* Declaration of Angel Mogollan ("Mogollan Decl.") ¶ 1. *See* Exh. A (Rojas Decl.) at ¶ 46, Exh. 2.

32. Plaintiff Mogollan never worked for any of the other defendant restaurants. *See* Affidavit of Carlos Montoya ("Montoya Aff.," attached as **Exhibit D**) at ¶ 5; Affidavit of Efren Aguilar Palma ("Palma Aff.," attached as **Exhibit E**) at ¶ 2l Affidavit of Maximo Torralba ("Torralba Aff.," attached as **Exhibit F**) at ¶ 5; Affidavit of Adriana Rengifo ("Rengifo Aff.," attached as **Exhibit G**) at ¶ 5; Affidavit of Luz Marina Bolonis Jimenez ("Jimenez Aff.," attached as **Exhibit H**) t ¶ 3; Affidavit of Aracelly Cifuentes ("Cifuentes Aff.," attached as **Exhibit I**) at ¶ 3. *See also* Exhibit B-3 Deposition of Luz Marina Bolonis Jiminez, ("Jiminez Dep.," attached as **Exhibit J**) at 27:14-25; Deposition of Maximo Carmen Inosencio ("Inoscencio Dep.," attached as **Exhibit K**) at 7-8:14-10.

33. Throughout his employment by Defendant 75-Corp., Plaintiff Mogollan only worked more than forty (40) hours per week during two workweeks. The weeks beginning on October 22, 2016, and November 5, 2016. He was incorrectly paid at his regular rate for a total of 16 throughout the course of his one-year employment. Defendant 75-02 Corp. owes him $95.04 (an additional $5.94 for the 16 hours) in overtime compensation. During these same two weeks, he worked a spread of 10 or more hours, and he was not paid his spread of hours premium. He is owed two minimum wage hours totaling $18.00 ($9 per hour minimum wage). Therefore, Defendant 75-02 Corp. owes Plaintiff Mogollan a total of $113.04. *See* Exh. A (Rojas Decl.) at ¶ ¶ 45, 46, Exhs. 1-2.[2]

34. Throughout his employment by Defendant 75-02 Corp., Plaintiff Mogollan was paid at an hourly rate which depended on whether he worked a night or day shift and whether he worked as baker or dishwasher. His hourly rate ranged from $10 to $11.88 per hour. *See* Exh. A (Rojas Decl.) at ¶ ¶ 45, 46, Exhs. 1-2.

35. Plaintiff Mogollan, in spite of having regular contact with the restaurant managers of 75-02 Inc. who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 24

***Plaintiff Alba Maria Mejia***

36. Plaintiff Alba Maria Mejia was advised by the restaurant managers at the time, Aracely Cifuente, Reynaldo Carbajal, and Luis German Rojas, that as

[2] at 75-02 CORP – 000108; 75-02 CORP – 000109; and 75-02 CORP –000111.

a tipped employee, pursuant to New York State and federal law, in the event that she actually received tips of at least, for example, $2.00 per hour, her hourly wage rate shall be adjusted downward by $2.00. She was further informed that this "deduction or allowance" acts as a setoff against her salary because she is in a position where her income is increased by the tips she received from customers. Plaintiff Mejia was also informed this deduction or allowance applies to any employee who customarily receives tips. She was also informed that she should not "tip out" (share gratuities) with employees who do not customarily and regularly receive tips, such as managers, cooks, bakers, or dishwashers. She was further advised that this does not prevent her from "pooling tips" with other tipped employees, such as where two servers voluntarily agree to "pool" the tips each one gets. *See* Exh. A (Rojas Decl.) at ¶ 38.

37. It was the practice at each of the defendant restaurants to maintain a "tip jar" on the counter where customers could leave tips. About a half hour before shift end, servers were to count and evenly split the tips amongst themselves. *See* Affidavit of Alejandra Loaiza ("Loaiza Aff.," attached as **Exhibit L**) at ¶ 6.

38. The servers who were in receipt of tips were never required to split their tips with managers. *See* Exh. L (Loaiza Aff.) at ¶ 6. *See also* Affidavit of Martha Hernandez ("Hernanez Aff.," attached as **Exhibit M**) ¶ 6.

39. Responsibilities of being a server included attending to the public, delivering food that was ordered to customers' tables, and cleaning tables after customers left. As a server, approximately, 5 percent of one's time was spent

cleaning. *See* Exh. L (Loaiza Aff.) at ¶ 5. *See also* Exh. M (Hernandez Aff.) at ¶ 3.

40. Plaintiff Mejia is familiar with the federal and state wage posters and laws as she has seen them in when working for various of the Defendant restaurants. *See* Deposition of Alba Maria Mejia ("Mejia Dep.," attached as **Exhibit N**) at 135-136:20-9; *See* Exh. A (Rojas Decl.) at ¶ ¶ 17, 76-77, Exh. 31.

41. Plaintiff Mejia acknowledges and understands that she is the only person active in this lawsuit who received tips. *See* Exh. N (Mejia Dep.) at 57-58:6-25.

42. Plaintiff Mejia acknowledges she received tips after all of her shifts while working for the various defendant restaurants. *See* Exh. N (Mejia Dep.) at 62:18-25.

43. Plaintiff Mejia acknowledges she received approximately $15.00-30.00 in tips per 8-hour shift while working for various of the Defendant restaurants, depending upon the year and the business for which she was working. *See* Exh. N (Mejia Dep.) at 64-66:20-9.

44. Plaintiff Mejia acknowledges that there was a tip pool between the servers throughout her time while working with the various defendant restaurants. *See* Exh. N (Mejia Dep.) at 59:22-25.

45. Plaintiff Mejia was employed from March 31, 2012, to November 2, 2012, by Defendant 37-01 Inc. as a server and counterperson. Her hourly rate was $7.50 per hour, which was above the federal minimum wage, except for one workweek in which her hourly rate was $8.50 per hour, and four workweeks in which her hourly

rate was $6.25 per hour. *See* Exh. A (Rojas Decl.) at ¶ ¶ 47, 48, Exhs. 3-4[3].

46. Plaintiff Mejia, in spite of having regular contact with the restaurant managers of 37-01 Inc. who were willing and able to adjust her hours, never informed a manager that she was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 25.

47. Plaintiff Mejia was informed that based on the guidelines at the time, 37-01 Inc. would take a tip allowance from the hourly minimum wage rate of tipped employees who received at least $1.00 per hour in tips by deducting $1 per hour from the New York City minimum wage of $7.25 per hour. As a tipped employee she would receive an hourly rate from 37-01 Inc. of at least $6.25 per hour. Even if she were to make more in tips than $1.00, she still was entitled to the $6.25 per hour wage. The New York State Department of Labor and/or federal law determines minimum wages and maximum tip allowances; the amounts set forth above were based on the guidelines at that time and changed over the years. *See* Exh. A (Rojas Decl.) at ¶ 39.

48. Plaintiff Mejia was employed from May 5, 2012, to August 22, 2014, by Defendant 81-16 Inc. as a server and counterperson. Her hourly rate was $6.25 per hour from March 31, 2012, to December 27, 2013. It was then raised to $8.13 per hour for the remainder of her employment with this Defendant, which was above the state and federal minimum wage. *See* Exh. A (Rojas Decl.) at ¶ ¶ 49, 50, Exhs. 5-6.

49. Plaintiff Mejia was informed that based on the guidelines at the time,

---

3 And at DEF-000001; DEF-000002; DEF-000003; DEF-000037; DEF-000049.

81-16 Inc. would take a tip allowance from the hourly minimum wage rate of tipped employees who receive at least $1 per hour in tips, by deducting $1 per hour from the New York City minimum wage of $7.25 per hour. As a tipped employee she would receive an hourly rate from 81-16 Inc. of at least $6.25 per hour. Even if she were to make more in tips than $1.00 she still was entitled to the $6.25 per hour wage. The New York State Department of Labor and/or federal law determines minimum wages and maximum tip allowances; the amounts set forth above were based on the guidelines at that time and changed over the years. In 81-16 Inc. paid Plaintiff Mejia an hourly rate of $8.13, $0.13 above the New York City minimum of the time, therefore for that period, there was no tip-credit to be received. *See* Exh. A (Rojas Decl.) at ¶ 40.

50. Plaintiff Mejia in spite of having regular contact with the restaurant managers of 81-16 Inc., who were willing and able to adjust her hours, never informed a manager that she was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 26.

51. Plaintiff Mejia was employed from June 1, 2013, to December 27, 2013, by Defendant 88-26 Inc. as a server and counterperson for 8 hours per workweek. Her hourly rate was $6.25 per hour. *See* Exh. A (Rojas Decl.) at ¶ ¶ 51, 52.

52. Plaintiff Mejia was informed that based on the guidelines at the time, 88-26 Inc. would take a tip allowance from the hourly minimum wage rate of tipped employees who receive at least $1.00 per hour in tips, by deducting $1 per hour from the New York City minimum wage of $7.25 per hour. As a tipped employee

she would receive an hourly rate from 88-26 Inc. of at least $6.25 per hour. Even if she were to make more in tips than $1.00, she still was entitled to the $6.25 per hour wage. The New York State Department of Labor and/or federal law determines minimum wages and maximum tip allowances; the amounts set forth above were based on the guidelines at that time and changed over the years. *See* Exh. A (Rojas Decl.) at ¶ 41.

53. Plaintiff Mejia in spite of having regular contact with the restaurant managers of 88-26 Inc., who were willing and able to adjust her hours, never informed a manager that she was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 27.

54. Plaintiff Mejia was employed from September 12, 2015, to April 15, 2016, by Defendant 75-02 Corp. as a server and counterperson. From September 12, 2015, to January 1, 2016, her hourly rate was $6.88 per hour and from January 9, 2016, her hourly rate was raised to $7.50 per hour, which was above the federal minimum wage. *See* Exh. A (Rojas Decl.) at ¶ ¶ 53-54.

55. Plaintiff Mejia was informed that based on the guidelines at the time, 75-02 Corp. would take a tip allowance from the hourly minimum wage rate of tipped employees who receive at least $1.87 per hour in tips, by deducting $1.87 per hour from the New York City minimum wage of $8.75 per hour. As a tipped employee she would receive an hourly rate from 75-02 Corp. of at least $6.88 per hour. Even if she were to make more in tips than $1.87 she still was entitled to the $6.88 per hour wage. The New York State Department of Labor and/or federal law

determines minimum wages and maximum tip allowances; the amounts set forth above were based on the guidelines at that time and changed over the years. *See* Exh. A (Rojas Decl.) at ¶ 42.

56. Plaintiff Mejia in spite of having regular contact with the restaurant managers of 75-02 Corp. who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 28.

57. Throughout her employment with the Defendants: 37-01 Inc., 81-16 Inc., 88-26 Inc.; and, 75-02 Corp., Plaintiff Mejia never worked over forty (40) hours per workweek and was never scheduled for more than five 8-hour shifts per workweek. In fact, in her five years working for these Defendant restaurants she was only scheduled once to work five 8-hour shifts in a workweek, which was by Defendant 37-01 Inc. Plaintiff Mejia never worked a spread of ten (10) or more hours. *See* Exh. A (Rojas Decl.) at ¶ ¶ 55 Exh. 11 and at DEF-000002.

***Plaintiff Nidia Perdomo***

58. Plaintiff Perdomo is familiar with the federal and state wage posters and laws as she has seen them in when working for various of the Corporate Defendants. *See* Exh. A (Rojas Decl.) at ¶ ¶ 17, 76-77, Exh. 31.

59. According to Plaintiff Perdomo, payroll documents were given to employees by the managers to sign and verify. *See* Deposition of Nidia ("Perdomo Dep.," attached as **Exhibit O**) at 18:6-13.

60. Plaintiff Perdomo was employed as a cook, from December 31, 2011,

to July 15, 2016, (with a four-month gap in her employment, from December 20, 2014, to April 24, 2015) by the Defendant 81-16 Inc. and, was always paid an hourly rate above the New York City and federal minimum wage. Her hourly rate was $11.88 per hour from December 31, 2011, to May 1, 2015, and her hourly rate was $12.50 per hour from January 2, 2016, to July 15, 2016. Throughout the course of her employment with Defendant 81-16 Inc. Plaintiff Perdomo worked one (1) overtime hour for which she was paid one and a half times her normal rate. *See* Exh. A (Rojas Decl.) at ¶ ¶ 56, 57, Exhs. 12-13 and at 81-16 INC – 000141.

61. Plaintiff Perdomo in spite of having regular contact with the restaurant managers of 81-16 Inc. who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 29.

62. Plaintiff Perdomo was employed as a cook from March 21, 2015, to June 19, 2015, by the Defendant 37-01 Inc. to work one 8-hour shift per workweek, except for one week in which she two 8-hour shifts. Plaintiff Perdomo and was always paid an hourly rate above the New York City and federal minimum wage. Her hourly rate throughout her employment was $11.88 per hour. *See* Exh. A (Rojas Decl.) at ¶ ¶ 58, 59, Exhs. 14, 15.

63. Plaintiff Perdomo in spite of having regular contact with the restaurant managers of 37-01 Inc. who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 30.

64. Plaintiff Perdomo was employed as a cook from July 16, 2016, to December 23, 2016, by the Defendant Arroyave, where she worked three 8-hour shifts per work week. Plaintiff Perdomo and was always paid an hourly rate above the New York City and federal minimum wage. Her hourly rate throughout her employment was $12.50 per hour. *See* Exh. A (Rojas Decl.) at ¶ ¶ 60, 61, Exhs. 16, 17.

65. Plaintiff Perdomo in spite of having regular contact with the restaurant managers of Arroyave who were willing and able to adjust his hours, never informed a manager that he was working “off-the clock” hours. *See* Exh. A (Rojas Decl.) at ¶ 31.

66. Throughout her more than five-year employment with the Defendants 81-16 Inc., 37-01 Inc., and Arroyave, Plaintiff Perdomo worked one (1) overtime hour for which she was compensated appropriately and was scheduled to work 40 hours in only fifteen workweeks. She was always paid an hourly rate above the New York City and federal minimum wage. She also never worked a spread of ten (10) or more hours. *See* Exh. A (Rojas Decl.) at ¶ 62, Exh. 18.

***Plaintiff Hector de la Rosa***

67. Plaintiff De la Rosa is familiar with the federal and state wage posters and laws as he has seen them in when working for various of the Corporate Defendants. *See* Exh. A (Rojas Decl.) at ¶ 17.

68. Plaintiff Hector de la Rosa was in contact with a manager when signing his weekly payroll documents. These managers had the authority to correct

errors in payroll documents when necessary (such as when employees failed to clock in or out) and compensate employees accordingly. *See* Deposition of Hector de la Rosa ("De La Rosa Dep.," attached as **Exhibit P**) at 24:15-20.

69. Plaintiff De la Rosa was employed by Defendant 75-02 Corp. as a dishwasher and helper from December 31, 2011, to January 13, 2017, and he was always paid an hourly rate above the New York City and federal minimum wage. He started at an hourly rate of $8.75 for the first eight weeks, from December 31, 2011, to February 24, 2012. His hourly rate was then raised to $10.50 per hour, from February 25, 2012, to December 28, 2012. From January 5, 2013, to January 13, 2017, his hourly rate was $11.25 per hour (except for a five-week period in which his rate was $10 per hour, from December 7, 2013, to February 7, 2014). During the three workweeks beginning on April 6, 2013, April 13, 2013, and April 27, 2013, he worked a total of 24 overtime hours for which he was compensated at his regular rate. Therefore, Defendant 75-02 Corp. owes Plaintiff De la Rosa a total of $135.00 (an additional $5.63 per hour for the 24 hours of overtime worked). *See* Exh. A (Rojas Decl.) at ¶ ¶ 63, 64, Exhs. 19-20.

70. Mr. De la Rosa, in spite of having regular contact with the restaurant managers of 75-02 Corp. who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 32. *See* Exh. P (De La Rosa Dep.) 20-21:22-2.

71. Plaintiff De la Rosa was employed by Defendant 81-16 Inc. as a dishwasher and helper for ten (10) weeks, from October 25, 2014, to June 27, 2015,

and he was always paid an hourly rate above the New York City and federal minimum wage. His hourly rate was $10, except for one week in which his rate was $11.25 per hour. He worked sixty-six (66) hours of overtime for which he mistakenly was compensated based on his regular rate. Defendant 81-16 Inc. owes him $330.00 (an additional $5.00 per hour for the 66 hours of overtime) in compensation. *See* Exh. A (Rojas Decl.) at ¶ ¶ 65, 66, Exhs. 21-22.

72. Mr. De la Rosa, in spite of having regular contact with the restaurant managers of 81-16 Inc. who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 33; *See* Exh. P (De La Rosa Dep.) 20-21:22-2.

73. Plaintiff De la Rosa was employed by Defendant 37-01 Inc. as a dishwasher and helper from April 3, 2015, to December 25, 2015, and he was always paid an hourly rate above the New York City and federal minimum wage. He was scheduled and worked one 8-hour shift per workweek, except for one week that he worked two shifts and one week, in which he worked three shifts. He started at an hourly rate of $10.00, from April 3, 2015, to May 30, 2015. His hourly rate was then raised to $10.62 per hour, from May 31, 2015, until his employment ended on December 25, 2015. *See* Exh. A (Rojas Decl.) at ¶ ¶ 67, 68, Exhs. 23-24.

74. Mr. De la Rosa, in spite of having regular contact with the restaurant managers of 37-01 Inc. who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 34. *See* Exh. P (De La Rosa Dep.) 20-21:22-2.

75. Plaintiff De la Rosa was employed by Defendant 94-19 Inc. as a dishwasher and helper for three (3) weeks, during the weeks of July 11, 2015, December 26, 2015, and April 8, 2017. He was always paid an hourly rate above the New York City and federal minimum wage. His hourly rate was $10.62 per hour. *See* Exh. A (Rojas Decl.) at ¶ ¶ 69, 70, Exhs. 25-26.

76. Mr. De la Rosa, in spite of having regular contact with the restaurant managers of 94-19 Inc. who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 35. *See* Exh. P (De La Rosa Dep.) 20-21:22-2.

77. Plaintiff De la Rosa was employed by Defendant V. Rojas as a dishwasher and helper from May 20, 2017, to March 22, 2019, and he was always paid an hourly rate above the New York City and federal minimum wage. He started at an hourly rate of $11.25, from May 20, 2017, to December 29, 2017. His hourly rate was then raised to $13.00 per hour, from January 1, 2018, to December 31, 2018. His hourly rate was then raised to $15.00 per hour, from January 1, 2019, until his employment ended on March 8, 2019. He was normally scheduled for one or two 8-hour shifts per workweek. Except for the weeks beginning December 12, 2017, December 23, 2017, December 30, 2017, in which he worked: 14 hours, 24 hours, and 22 hours respectively. *See* Exh. A (Rojas Decl.) at ¶ ¶ 71, 72, Exhs. 27-28.[4]

78. Mr. De la Rosa, in spite of having regular contact with the restaurant

---

[4] and at V. ROJAS – 0000034 - V. ROJAS – 000003437

managers of V. Rojas who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 36. *See* Exh. P (De La Rosa Dep.) 20-21:22-2.

79. Plaintiff De la Rosa was employed by Defendant Arroyave as a dishwasher and helper from September 30, 2017, to March 15, 2019, and he was always paid an hourly rate above the New York City and federal minimum wage. He started at an hourly rate of $11.25, from September 30, 2017, to December 29, 2017. His hourly rate was then raised to $13.00 per hour, from February 3, 2018, to December 31, 2018. His hourly rate was then raised to $15.00 per hour, from January 1, 2019, until his employment ended on March 15, 2019. During the workweek beginning on July 21, 2018, he worked a spread of ten (10) or more hours, and he was not paid his spread of hours premium. He is owed one minimum wage hour at $13.00. Therefore, Defendant ARROYAVE owes Plaintiff De la Rosa a total of $13.00. *See* Exh. A (Rojas Decl.) at ¶ ¶ 73, 74, Exhs. 29-30.[5]

80. Mr. De la Rosa, in spite of having regular contact with the restaurant managers of Arroyave who were willing and able to adjust his hours, never informed a manager that he was working "off-the clock" hours. *See* Exh. A (Rojas Decl.) at ¶ 37. *See* Exh. P (De La Rosa Dep.) 20-21:22-2.

[5] And at ARROYAVE – 0000093.

Dated: New York, New York

July 31, 2020

Respectfully submitted,

SANCHEZ & ASSOCIATES

By: */s/ Oscar E. Sanchez*

Oscar E. Sanchez, Esq.
Sanchez & Associates
40-20 58th Street
Woodside, NY 11377
Tel: (718) 747-4162
Fax: (347) 549-4106

*Attorney for Defendants*