UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
Angel Mogollan et al.,

                            Plaintiffs,

           -against-

La Abundancia Bakery & Restaurant Inc. et
al.,

                            Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __9/30/2020__

1:18-cv-03202 (GBD) (SDA)

REPORT AND RECOMMENDATION
AND ORDER

STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.

TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE:

Before the Court are Plaintiffs' motion for summary judgment[1] (Pls.' SJ Mot., ECF No. 227);

Defendants' motion for partial summary judgment and decertification (Defs.' PMSJ & Decert.

Mot., ECF No. 242); Plaintiffs' motion to certify a Rule 23 class (Pls.' Class Cert Mot., ECF No. 224);

Plaintiffs' motion for sanctions (Pls.' Sanctions Mot., ECF No. 243); Defendants' motion for

sanctions (Defs.' Sanctions Mot., ECF No. 252); and the Court's Order for Plaintiff Claudia Vasquez

Ibarra ("Ibarra") to show cause why her claims should not be dismissed for failure to prosecute.

(7/23/20 OTSC, ECF No. 237.)

For the reasons set forth below, I respectfully recommend that Plaintiffs' motion for

summary judgment be GRANTED IN PART and DENIED IN PART; that Defendants' motion for

summary judgment be DENIED; that Defendants' motion for decertification be DENIED; that

---

[1] Although denominated as a motion for summary judgment, Plaintiffs' motion actually is a motion for partial summary judgment, as Plaintiffs are seeking in the proposed Order that accompanied their notice of motion separate summary judgment findings, to be followed by "supplemental briefing" on damages. (Pls.' 7/17/20 Proposed Order, ECF No. 227-1.)

Plaintiffs' motion for class certification be GRANTED; and that Plaintiff Ibarra's claims be dismissed without prejudice for failure to prosecute. In addition, since they are non-dispositive motions, *see* Fed. R. Civ. P. 72(a), I hereby ORDER that Plaintiffs' motion for sanctions is DENIED and Defendants' motion for sanctions is GRANTED IN PART and DENIED IN PART.[2]

## FACTUAL BACKGROUND

Defendant La Abundancia Bakery & Restaurant Inc. was a bakery and restaurant located at 63-10 Broadway, Woodside, New York 11377. (Pls.' 56.1 Resp., ECF No. 291, ¶ 1.) Defendant 63-12 La Abundancia Inc. ("63-12 Inc.") is a bakery and restaurant located at 63-10 Broadway Ave., Woodside, New York 11377. (*Id*. ¶ 2; Defs.' 56.1 Resp., ECF No. 295, ¶ 2.) Defendant 75-02 La Abundancia Bakery and Restaurant Corp. ("75-02 Corp.") is a bakery and restaurant located at 75-02 Roosevelt Ave., Jackson Heights, New York 11372. (Pls.' 56.1 Resp. ¶ 3; Defs.' 56.1 Resp. ¶ 3.) Defendant 81-16 La Abundancia Inc. ("81-16 Inc.") was a bakery and restaurant located at 81-16 Roosevelt Ave, Jackson Heights, New York 11372. (Pls.' 56.1 Resp. ¶ 4.) Defendant 37-01 La Abundancia Inc. ("37-01 Inc.") was a bakery and restaurant located at 37-01 Junction Blvd., Corona, New York 11368. (*Id*. ¶ 5.) Defendant 88-26 La Abundancia Inc. ("88-26 Inc.") was a bakery and restaurant located at 88-28 37th Ave., Jackson Heights, New York. (*Id*. ¶ 6.) Defendant M. Arroyave Food Corp. ("Arroyave") is a bakery and restaurant located at 81-16 Roosevelt Ave, Jackson Heights, New York 11372. (Pls.' 56.1 Resp. ¶ 7; Defs.' 56.1 Resp. ¶ 5.) Defendant V. Rojas Food Corp. ("V. Rojas Corp.") is a bakery and restaurant located at 37-01 Junction Blvd., Corona,

---

[2] In deciding these motions, the Court has reviewed the parties' filings at ECF Nos. 224-34, 237-38, 242-62, 264-97 and 300-06. Although the Court grants Defendants' motion to file amended memoranda of law that contain tables of contents and tables of authorities (Motion to Amend/Correct, ECF No. 307), and notes the memoranda filed at ECF No. 308, the Court cites herein the memoranda that initially were filed by Defendants.

New York 11368. (Pls.' 56.1 Resp. ¶ 8; Defs.' 56.1 Resp. ¶ 7.) Defendant 94-19 La Abundancia Inc. ("94-19 Inc.") is a bakery and restaurant located at 94-19 Roosevelt Ave, Jackson Heights, New York 11372. (Pls.' 56.1 Resp. ¶ 9.) Defendant 153-40 La Abundancia Inc. ("153-40 Inc.") is a bakery and restaurant located at 153-40 Hillside Avenue, Jamaica, New York 11432. (Pls.' 56.1 Resp. ¶ 10; Defs.' 56.1 Resp. ¶ 10.)

Defendant Ruben Rojas ("Rojas") is the 100 percent shareholder of 63-12 Inc. and 153-40 Inc. (Pls.' 56.1 Resp. ¶ 11; Defs.' 56.1 Resp. ¶ 11.) Rojas is a 50 percent shareholder with Vladimir Wallace (who also is a 50 percent shareholder) of Defendant 75-02 Corp. (Pls.' 56.1 Resp. ¶ 12; Defs.' 56.1 Resp. ¶ 12.) Rojas is a 50 percent shareholder with Maria Rojas Cardona (who also is a 50 percent shareholder) of Defendant 94-19 Inc. (Pls.' 56.1 Resp. ¶ 13; Defs.' 56.1 Resp. ¶ 12.) Martha Lucia Arroyave Rojas (Rojas's ex-wife) is the 100 percent shareholder of Arroyave. (Pls.' 56.1 Resp. ¶ 14; Defs.' 56.1 Resp. ¶ 13.) Valeria Rojas (Rojas's adult daughter) is the 100 percent shareholder of Defendant V. Rojas Corp. (Pls.' 56.1 Resp. ¶ 15; Defs.' 56.1 Resp. ¶ 14.)

Rojas managed the restaurant owned by 63-12 Inc. (Pls.' 56.1 Resp. ¶ 16; Defs.' 56.1 Resp. ¶ 15.) The parties dispute who managed the restaurants owned by 75-02 Corp., 81-16 Inc., 37-01 Inc., 153-40 Inc., Arroyave and V. Rojas. (*See* Pls.' 56.1 Resp. ¶¶ 19-22; Defs.' 56.1 Resp. ¶¶ 15, 24, 28-29.) The parties also dispute the authority that Rojas had with respect to the employees who worked at the restaurants operated under the trade name "La Abundancia." (*See* Pls.' 56.1 Resp. ¶¶ 23-24, 28; Defs.' 56.1 Resp. ¶¶ 18-19, 21.)[3]

---

[3] The Second Amended Complaint alleges that Defendant Monica Ferrerosa ("Ferrerosa") "exercised control over the employment terms and conditions of Plaintiffs." (SAC, ¶ 20.) However, Plaintiffs do not appear to seek summary judgment against Ferrerosa, since she is not mentioned in their summary judgment memorandum, proposed order or 56.1 statement.

Plaintiff Angel Mogollan ("Mogollan") was employed as a baker and a dishwasher at the La Abundancia restaurant located at 75-02 Roosevelt Ave Jackson Heights, NY 11372, from October 2016 to October 2017. (*See* Pls.' 56.1 Resp. ¶¶ 31, 34; Defs.' 56.1 Resp. ¶¶ 34, 36.) Mogollan was paid at an hourly rate which depended on whether he worked a night or day shift and whether he worked as baker or dishwasher. (Pls.' 56.1 Resp. ¶ 34.) His hourly rate ranged from $10 to $11.88 per hour. (*Id*.) The parties dispute whether Mogollan worked at other La Abundancia locations; the number of hours he worked; whether he ever worked "off the clock;" and whether he is owed for certain spread of hours premiums.[4] (*See* Pls.' 56.1 Resp. ¶¶ 31-35; Defs.' 56.1 Resp. ¶¶ 34-38, 40, 58-59.)

Plaintiff Alba Maria Mejia ("Mejia") was employed from March 31, 2012 to November 2, 2012 by 37-01 Inc. as a server and counterperson. (Pls.' 56.1 Resp. ¶ 45; Defs.' 56.1 Resp. ¶ 43.) Her hourly rate was $7.50 per hour, which was above the federal minimum wage, except for one workweek in which her hourly rate was $8.50 per hour, and four workweeks in which her hourly rate was $6.25 per hour. (Pls.' 56.1 Resp. ¶ 45.) Mejia was employed from May 5, 2012 to August 22, 2014 by 81-16 Inc. as a server and counterperson. (Pls.' 56.1 Resp. ¶ 48; Defs.' 56.1 Resp. ¶ 43.) Her hourly rate was $6.25 per hour from March 31, 2012 to December 27, 2013. (Pls.' 56.1 Resp. ¶ 48.) It then was raised to $8.13 per hour for the remainder of her employment with 81-16 Inc., which was above the state and federal minimum wage. (*Id*.) Mejia was employed from June 1, 2013 to December 27, 2013 by 88-26 Inc. as a server and counterperson. (Pls.' 56.1 Resp. ¶ 51; Defs.' 56.1 Resp. ¶ 43.) Her hourly rate was $6.25 per hour. (Pls.' 56.1 Resp. ¶ 51.) Mejia

---

[4] Defendants assert that there were only two instances where spread of hours premiums were not paid to Mogollan amounting to $18.00. (*See* Defs.' 56.1 Resp. ¶ 59.)

was employed from September 12, 2015 to April 15, 2016 by 75-02 Corp. as a server and counterperson. (Pls.' 56.1 Resp. ¶ 54; Defs.' 56.1 Resp. ¶ 41.) From September 12, 2015 to January 1, 2016, her hourly rate was $6.88 per hour and from January 9, 2016, her hourly rate was raised to $7.50 per hour. (Pls.' 56.1 Resp. ¶ 54.)

Mejia acknowledges she received tips after all of her shifts while working for the various defendant restaurants and that there was a tip pool. (*See* Pls.' 56.1 Resp. ¶¶ 42, 44.) She received approximately $15.00 to $30.00 in tips per 8-hour shift while working for various of the Defendant restaurants, depending upon the year and the business for which she was working. (*Id*. ¶ 43.)

The parties dispute whether Mejia worked at other La Abundancia locations at various times on an as-needed basis; the number of hours Mejia worked; the amount of time she spent doing non-tipped side work; whether she ever worked "off the clock;" whether managers were included in the tip pools; whether she worked at any La Abundancia location after April 2016; whether for a period of time she was paid below the minimum wage; and whether she is owed any spread of hours premiums. (*See* Pls.' 56.1 Resp. ¶¶ 44-46, 50, 53, 56-57; Defs.' 56.1 Resp. ¶¶ 42-47, 58-59, 64-65.) They also dispute what Mejia was told by her managers regarding the tip allowance and what notices she received regarding such allowance. (Pls.' 56.1 Resp. ¶¶ 47, 49, 52, 55; Defs.' 56.1 Resp. ¶ 62.) However, Defendants admit that Mejia received improper wage statements that did not include the tip credit claimed as part of the minimum wage. (Defs.' 56.1 Resp. ¶ 63.)

Plaintiff Nidia Perdomo ("Perdomo") was employed as a cook from December 31, 2011, to July 15, 2016 (with a four-month gap in her employment from December 20, 2014 to April 24,

2015) by 81-16 Inc. and was always paid an hourly rate above the New York City and federal minimum wage. (Pls.' 56.1 Resp. ¶ 60; Defs.' 56.1 Resp. ¶ 49.) Her hourly rate was $11.88 per hour from December 31, 2011 to May 1, 2015, and her hourly rate was $12.50 per hour from January 2, 2016 to July 15, 2016. (Pls.' 56.1 Resp. ¶ 60.) Perdomo was employed as a cook from March 21, 2015 to June 19, 2015 by 37-01 Inc. and was always paid an hourly rate above the New York City and federal minimum wage. (Pls.' 56.1 Resp. ¶ 62; Defs.' 56.1 Resp. ¶ 50.) Her hourly rate throughout her employment was $11.88 per hour. (Pls.' 56.1 Resp. ¶ 62.) Perdomo was employed as a cook from July 16, 2016 to December 23, 2016 by Arroyave and was always paid an hourly rate above the New York City and federal minimum wage. (Pls.' 56.1 Resp. ¶ 64; Defs.' 56.1 Resp. ¶ 50.) Her hourly rate throughout her employment was $12.50 per hour. (Pls.' 56.1 Resp. ¶ 64.)

The parties dispute whether Perdomo worked at other La Abundancia locations at various times on an as-needed basis; the number of hours that Perdomo worked; the rate at which she was paid; whether she worked "off the clock" hours; and whether she is owed any spread of hours premiums. (*See* Pls.' 56.1 Resp. ¶¶ 60-66; Defs.' 56.1 Resp. ¶¶ 50-53, 58-59.)

Plaintiff Hector De La Rosa Villares ("Villares") was employed by 75-02 Corp. as a dishwasher, food preparer and helper from December 31, 2011 to January 13, 2017 and he was always paid an hourly rate above the New York City and federal minimum wage. (Pls.' 56.1 Resp. ¶ 69; Defs.' 56.1 Resp. ¶ 54.) He started at an hourly rate of $8.75 for the first eight weeks, from December 31, 2011 to February 24, 2012. (Pls.' 56.1 Resp. ¶ 69.) His hourly rate then was raised to $10.50 per hour, from February 25, 2012 to December 28, 2012. (*Id*.) From January 5, 2013 to January 13, 2017, his hourly rate was $11.25 per hour (except for a five-week period in which his

rate was $10 per hour, from December 7, 2013 to February 7, 2014). (*Id*.) Villares was employed by 81-16 Inc. as a dishwasher and helper for ten weeks, from October 25, 2014 to June 27, 2015, and he was always paid an hourly rate above the New York City and federal minimum wage. (Pls.' 56.1 Resp. ¶ 71; Defs.' 56.1 Resp. ¶ 55.) His hourly rate was $10, except for one week in which his rate was $11.25 per hour. (Pls.' 56.1 Resp. ¶ 71.)

Villares was employed by 37-01 Inc. as a dishwasher and helper from April 3, 2015 to December 25, 2015 and he was always paid an hourly rate above the New York City and federal minimum wage. (Pls.' 56.1 Resp. ¶ 73; Defs.' 56.1 Resp. ¶ 55.) He started at an hourly rate of $10.00 from April 3, 2015 to May 30, 2015. (Pls.' 56.1 Resp. ¶ 73.) His hourly rate was then raised to $10.62 per hour from May 31, 2015 until his employment ended on December 25, 2015. (*Id*.) Villares was employed by 94-19 Inc. as a dishwasher and helper for three weeks, during the weeks of July 11, 2015, December 26, 2015 and April 8, 2017, and he was always paid an hourly rate above the New York City and federal minimum wage. (Pls.' 56.1 Resp. ¶ 75; Defs.' 56.1 Resp. ¶ 55.) His hourly rate was $10.62 per hour. (Pls.' 56.1 Resp. ¶ 75.) Villares was employed by V. Rojas Corp. as a dishwasher and helper from May 20, 2017 to March 22, 2019, and he was always paid an hourly rate above the New York City and federal minimum wage. (Pls.' 56.1 Resp. ¶ 77; Defs.' 56.1 Resp. ¶ 55.) He started at an hourly rate of $11.25 from May 20, 2017 to December 29, 2017. (Pls.' 56.1 Resp. ¶ 77.) His hourly rate then was raised to $13.00 per hour from January 1, 2018 to December 31, 2018. (*Id*.) His hourly rate then was raised to $15.00 per hour from January 1, 2019 until his employment ended on March 8, 2019. (*Id*.) Villares was employed by Arroyave as a dishwasher and helper from September 30, 2017 to March 15, 2019, and he was always paid an hourly rate above the New York City and federal minimum wage. (Pls.' 56.1 Resp. ¶ 79; Defs.'

56.1 Resp. ¶ 55.) He started at an hourly rate of $11.25 from September 30, 2017 to December 29, 2017. (Pls.' 56.1 Resp. ¶ 79.) His hourly rate then was raised to $13.00 per hour from February 3, 2018 to December 31, 2018. (*Id*.) His hourly rate then was raised to $15.00 per hour from January 1, 2019 until his employment ended on March 15, 2019. (*Id*.)

The parties dispute whether Villares worked at other La Abundancia locations at various times on an as-needed basis; the number of hours that he worked; whether he worked "off the clock" hours; and whether he is owed for certain spread of hours premiums.[5] (*See* Pls.' 56.1 Resp. ¶¶ 69-74, 76-80; Defs.' 56.1 Resp. ¶¶ 55, 57-59.)[6]

The same timekeeping system and paystubs are used at all the Defendant restaurants. (Rojas Dep., ECF No. 301-9, at 77-79.) Moreover, there is deposition testimony from a waitress who worked at more than one of the Defendant restaurants that the employment terms were the same at the various La Abundancia locations. (*See* Barreto Dep., ECF No. 228-4, at 20-21.)

Rojas admitted that employees of Defendant restaurants were paid based upon the hours in their shifts, not based upon the time that they clocked in and clocked out. (*See* Rojas Dep. at 88-89, 92-93.) The record suggests that Defendants did not understand that premiums were due to employees when their spread of hours exceeded 10 hours in a single day. (*See* Inosencio Dep., ECF No. 228-7, at 21 (store manager at one of Defendant restaurants who testified that she did not know what a spread of hours was); *see also* Rojas Dep. at 104.) Moreover, Defendants admit

---

[5] Defendants assert that there was only one instance where a spread of hours premium was not paid to Villares amounting to $13.00. (*See* Defs.' 56.1 Resp. ¶ 59.)

[6] Neither Plaintiffs nor Defendants address Plaintiff Ibarra and the Court recommends that the claims asserted by her be dismissed for failure to prosecute. (*See infra*.)

that spread of hours premiums were not paid to Mogollan on two occasions and to Villares on one occasion. (*See* Defs.' 56.1 Resp. ¶ 59.)

## PROCEDURAL HISTORY

On April 12, 2018, Mogollan filed this action against Defendants alleging claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (Compl., ECF No. 1.) On October 16, 2018, Mogollan filed an Amended Complaint. (Am. Compl., ECF No. 40.) On April 8, 2019, the Court granted in part Mogollan's motion, pursuant to 29 U.S.C. § 216(b), for conditional collective certification and conditionally certified a class of all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, counterpersons, cashiers and waiters) employed by 75-02 Corp. on or after April 12, 2012. *See Mogollan v. La Abundancia Bakery & Rest. Inc.*, No. 18-CV-03202 (GBD) (SDA), 2019 WL 1512714, at *5 (S.D.N.Y. Apr. 8, 2019). On June 28, 2019, Mejia filed a consent to sue under the FLSA. (6/28/19 Consent, ECF No. 98.) On September 10, 2019, Mogollan and Mejia filed a Second Amended Complaint.[7] (SAC, ECF No. 110.) On September 17, 2019, Villares filed a consent to sue under the FLSA. (9/17/19 Consent, ECF No. 120.)

On November 4, 2019, the Court granted Plaintiffs' renewed motion, pursuant to 29 U.S.C. § 216(b), for conditional collective certification and conditionally certified a class of all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, delivery persons, counterpersons, helpers and wait staff) employed by each of the La Abundancia locations on or after April 12, 2012. *See Mogollan*, 2019 WL 5693375,

---

[7] The docket does not reflect that an Answer to the Second Amended Complaint was filed by Defendants.

at *7 (S.D.N.Y. Nov. 4, 2019). On February 26, 2020, Ibarra filed a consent to become a party plaintiff under the FLSA. (2/26/20 Consent, ECF No. 164.)

Following completion of discovery, the parties filed the remaining motions that are now before the Court.

## SUMMARY JUDGMENT MOTIONS

### LEGAL STANDARDS

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994) (quotation and citation omitted). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence on each material element must be sufficient to entitle the movant to relief as a matter of law. *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Put another way, the movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). To defeat a motion for

summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

**PLAINTIFFS' SUMMARY JUDGMENT MOTION**

The Court addresses below each of the claims or issues as to which Plaintiffs seek summary judgment.

## I.    Plaintiffs' Overtime Claims

Plaintiffs assert that they "regularly worked more than forty (40) hours per workweek" (Pls.' SJ Mem., ECF No. 228, at 2 (citing Mogollan Decl. ¶¶ 7-9; Mejia Decl. ¶¶ 7-11; Perdomo Decl. ¶¶ 4, 6; Villares Decl. ¶¶ 4, 8-10)) and that they "were either not paid their overtime

premiums or were paid at the straight-time regular hourly rate for all hours worked over forty (40), instead of the proper overtime rate of one and one-half times the regular hourly rate." (*Id*. (citing Mogollan Decl. ¶ 9; Mejia Decl. ¶ 7; Perdomo Decl. ¶¶ 4, 6; Villares Decl. ¶¶ 10-11).) However, Defendants have proffered evidence to the contrary. (*See* Rojas Decl., ECF No. 247, ¶¶ 45-74; *see also* Defs.' 56.1 Resp. ¶ 58.) Notably, Defendants have submitted time records reflecting (with certain minor exceptions)[8] that Plaintiffs did not work more than 40 hours per week and thus were not owed overtime. (*See* Rojas Decl., Exs. 1 to 30, ECF Nos. 249-51, 253-56, 262.) Due to issues of material fact that cannot be resolved at this stage, I recommend that Plaintiffs' motion for summary judgment with respect to their overtime claims be denied.

## II.     Minimum Wage Claim Based Upon Invalid Tip Credit Allowance

Plaintiffs contend that Mejia was not paid minimum wage due to an invalid tip credit allowance because Defendants did not meet the notice and/or recordkeeping requirements under the FLSA and NYLL to claim a tip credit. (*See* Pls.' SJ Mem. at 5-14.)

"Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." *Gamero v. Koodo Sushi Corp*., 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017) (citation omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018). This allowance is referred to as a "tip credit." *See id*.

---

[8] With respect to Mogollan and Villares, Defendants acknowledge that certain *de minimis* amounts of overtime are due (*see* Defs.' 56.1 Resp. ¶ 58), but such acknowledgement does not negate the genuine factual issues that remain relating to Plaintiffs' overtime claims. Since there are factual issues regarding what additional overtime, if any, is owed to Mogollan and Villares, the Court does not recommend that partial summary judgment be granted in their favor as to these *de minimis* amounts. For the orderly and efficient disposition of this case, it would be more prudent to await the outcome of the trial.

To avail itself of the FLSA's tip credit, an employer must inform its employee of the statute's tip credit provisions. *See* 29 U.S.C. § 203(m). "This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (quoting *Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 27 (1st Cir. 2014)). "The FLSA's notice provision does not require that the notice be given in writing." *Hernandez v. Jrpac Inc.*, No. 14-04176 (PAE), 2016 WL 3248493, at *23 (S.D.N.Y. June 9, 2016). However, "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum wage . . .." *Inclan*, 95 F. Supp. 3d at 497 (citation omitted).

The NYLL also permits an employer to take a tip credit for tipped employees, "subject to certain conditions similar to those under the FLSA." *Jrpac*, 2016 WL 3248493, at *25. However, notice of the tip credit under the NYLL "must be written." *Id*.; *accord Gamero*, 272 F. Supp. 3d at 501 (citing *Jrpac*). The NYLL requires that "[p]rior to the start of employment, an employer shall give each employee written notice of . . . the amount of tip credit, if any, to be taken from the basic minimum hourly rate. . . . The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-2.2(a). Once an employer has provided written notice of this tip credit, the employer must obtain "acknowledgement of receipt signed by the employee." *Id*. § 146-2.2(c); *see also Xiao Dong Fu v. Red Rose Nail Salon Inc.*, No. 15-CV-07465 (KPF), 2018 WL 1472508, at *5 (S.D.N.Y. Mar. 26, 2018) ("A 'critical distinction' between the tip-credit requirements of the NYLL and the FLSA is the former's mandate that notice be written and the employer must receive and retain for six years

the employee's written acknowledgment of the notice." (citations omitted).[9] "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid." *Salustio v. 106 Columbia Deli Corp*., 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017).

In the present case, Defendants submit evidence regarding the notice that was given to employees regarding the tip credit. For example, Rojas states that "signs were posted at each of [the] restaurant businesses designed to convey to the employees their various rights under the Fair Labor Standard Act, including but not limited to informing them of their rights as to . . . tip credits." (Rojas Decl. ¶ 17.) Defendants also contend that Mejia was given detailed information regarding the tip credit. (*See id*. ¶¶ 38-42.) Mejia denies having been provided such information. (*See* Mejia Decl., ECF No. 232, ¶ 13.) The Court finds that this creates an issue of fact regarding whether Defendants may claim the tip credit under the FLSA and thus the Court recommends that summary judgment be denied on Mejia's minimum wage claim under the FLSA.

---

[9] In their reply in support of their partial summary judgment motion, Defendants argue that written notice of the tip credit is not required under the NYLL, citing to an unidentified opinion letter from the New York Department of Labor. (Defs.' PMSJ Reply, ECF No. 306, at 5.) From the text of what is quoted, it appears that Defendants are referring to a letter written on March 4, 2015 by Pico Ben-Amotz, the General Counsel of the New York Department of Labor, to Joseph D. Morelle, Majority Leader of the New York State Assembly. Even if the Court were to consider this letter, however, I decline to afford the opinion deference, as it is contrary to the plain language of the regulations cited above, *see* 12 N.Y.C.R.R. § 146-2.2 (requiring employers to provide "written notice of pay rates, tip credit and pay day"), and is inconsistent with abundant case law in this Circuit. *See Garcia v. Saigon Mkt. LLC*, No. 15-CV-09433 (VSB), 2019 WL 4640260, at *9 (S.D.N.Y. Sept. 24, 2019) (stating that decision following Ben-Amotz opinion letter "represents the minority view among courts in this district and contradicts the plain language of the regulations"); *see also Marin v. Apple-Metro, Inc.*, No. 12-CV-05274 (ENV) (CLP), 2017 WL 4950009 (E.D.N.Y. Oct. 4, 2017) ("[C]onsistent with the Department of Labor's current interpretation of its own regulations, the regulations themselves, and prior case law in this district, the Court declines to find that Mr. Ben-Amotz's letter to a member of the New York State Assembly is entitled to deference . . ..").

With respect to the NYLL, however, Mejia was not provided with written notice of the tip credit and, in any event, no acknowledgement of receipt by her has been proffered by Defendants. Thus, I recommend that Mejia be granted partial summary judgment as to liability regarding her minimum wage claim under the NYLL.[10] Moreover, if the Court adopts my recommendation to certify a class, *see infra*, I recommend that summary judgment also be granted to members of the tipped subclass as to liability on their equivalent claims, as Defendants have not presented evidence that they provided the required written tip credit notice to any employees. (*See* Defs.' 56.1 Resp. ¶ 43.)

III. **Time Shaving Claims**

Plaintiffs contend that Defendants failed to compensate Plaintiffs for all hours worked due to their "time-shaving" practice. (Pls.' SJ Mem. at 15-18.) Plaintiffs refer to Rojas's deposition testimony where he states that he did not pay employees based upon the time that they clocked in and out, but paid them based upon their scheduled shifts. (*Id*. at 16-18 (citing Rojas Dep. at 87-89, 92-93, 114).) Defendants refer to parts of the same testimony by Rojas to argue that "Defendants' employees [were] paid for time 'when they [were] working.'" (Def. SJ Opp. Mem., ECF No. 296, at 10 (emphasis omitted).) Defendants contend that Plaintiffs improperly were seeking to be paid for time when they "clock[ed] in early to socialize" and for time when they "delay[ed] in clocking out to attend to personal business." (*See id*.)

Given that issues of fact exist regarding how many hours Plaintiffs worked and, thus, what, if any, uncompensated work was done by Plaintiffs, I recommend that summary judgment

---

[10] Mejia also argues that she engaged in non-tipped side work, but the Court finds issues of fact regarding whether such work was done, as well as the extent of it. (*See* Defs.' 56.1 Resp. ¶ 65.)

be denied as to Plaintiffs' time shaving claims. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 364 (2d Cir. 2011) ("the dispute as to the precise amount of [plaintiff's] uncompensated work is one of fact for trial").

## IV.   Spread Of Hours Claims

Plaintiffs assert that they are entitled to unpaid spread of hours wages under N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6. That provision states that "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6. "Spread of hours" refers to "the length of the interval between the beginning and end of an employee's workday." *Id*. In support of their spread of hours claims, Plaintiffs attach timesheets that purportedly reflect spread of hours exceeding 10. (*See* Ex. H Timesheets, ECF No. 228-8.) Notably, only two of the timesheets proffered by Plaintiffs contain the name of any of the Plaintiffs in this case (*i.e.*, Mogollan).[11] (*See* Ex. H Timesheets at 4 of 6.) Plaintiffs argue from these five pages that "Defendants fail to pay spread of hours compensation when employees work workdays of over ten (10) hours, and instead just pay them for their hours worked. (Pls.' SJ Mem. at 19.)

Although Defendants admit that they made spread-of-hour errors regarding Mogollan on two occasions where his workday exceeded 10 hours (and also admit a single error regarding Villares),[12] Defendants argue that they had a policy of having their employees work 8-hour shifts

---

[11] The employee names on certain of the timesheets are redacted.

[12] Since there are factual issues regarding what additional spread of hours premiums, if any, are owed to Mogollan and Villares, the Court does not recommend that partial summary judgment be granted in their favor as to the amounts admittedly due. For the orderly and efficient disposition of this case, it would be more prudent to await the outcome of the trial.

and cite to time records reflecting that Plaintiffs worked less than 10 hours. (*See* Defs.' SJ Opp. Mem. at 11-12; Defs.' 56.1 Stmt., ECF No. 288, ¶¶ 33, 57, 66, 79.) On the record before the Court, there plainly are issues of fact that must be resolved at trial regarding Plaintiffs' spread of hours claims. Thus, I recommend that Plaintiffs' motion for summary judgment as to those claims be denied.

## V. <u>Wage Theft Prevention Act Claims</u>

Plaintiffs seek to recover damages for Defendants' alleged failure to provide regular wage statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA"). (Pls.' SJ Mem. at 20-22.) The WTPA requires employers to furnish each employee with a statement with every payment of wages, listing the following:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages . . .. [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Lab. Law § 195(3). New York's Labor Law, however, provides an affirmative defense for violations of Section 195(3) for employers who made complete and timely payment of wages. *Id*. § 198 (1-d). Although this "affirmative defense was enacted pursuant to a 2011 amendment, . . . 'the legislative history of the amendments to the § 198 Affirmative Defense demonstrates that they are remedial and that that the legislature intended them to have retroactive effect.'" *Belvin v. Electchester Mgmt. LLC*, No. 15-CV-04924 (KAM) (PK), 2020 WL 489532, at *8 n.8 (E.D.N.Y. Jan. 30, 2020) (citation omitted).

In the Court's view, decision on the WTPA claims should await the outcome of the decision on the Plaintiffs' other claims. At that time, it will be known whether or not any of the Defendants made "complete and timely payment of wages." *See* N.Y. Lab. Law § 198 (1-d). Thus, I recommend that Plaintiffs' motion for summary judgment on the WTPA claims be denied.

## VI.    Liquidated Damages Claims

Federal and state law provide for an additional award of liquidated damages to plaintiffs who establish that their employers have failed to pay required wages. An employer who violates the FLSA "shall be liable" for unpaid minimum and overtime wages in "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), but a defendant employer can avoid such an award by proving that the violation was the result of a good faith error. *See id*. § 260. The same amount of liquidated damages is available under the NYLL. *See* NYLL § 198(1-a). An employer can avoid a liquidated damages award under the NYLL by "prov[ing] a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a).

Plaintiffs seek summary judgment as to their entitlement to liquidated damages under both the FLSA and the NYLL. Plaintiffs assert that "Defendants did not act in subjective good faith with objectively reasonable grounds for believing that they did not violate the FLSA and NYLL." (Pls.' SJ Mem. at 23.) However, Plaintiffs' claims presupposes that liability has been established as a matter of law for non-payment of minimum and overtime wages. Inasmuch as there are issues of fact as to whether there has been any non-payment of wages, it is premature for the Court to address Plaintiffs' liquidated damages claims. Thus, I recommend that Plaintiffs' motion for summary judgment on their liquidated damages claims be denied. *See Lawtone-Bowles v. City of New York*, 16-CV-04240 (AJN), 18-CV-04338 (AJN), 2020 WL 2833366, at *5 (S.D.N.Y. June 1,

2020) ("Because Plaintiffs' motion for summary judgment is denied on the underlying unpaid overtime violations, their motion for summary judgment on liquidated damages . . . is also denied.").

## VII.   FLSA Statute Of Limitations

If a defendant is found to have willfully violated the FLSA, then a plaintiff is entitled to a three-year statute of limitations, instead of the default two years. *See* 29 U.S.C. § 255(a). Plaintiffs seek a determination as a matter of law that they "are entitled to recover for a three-year statutory period under the FLSA because defendants acted willfully." (Pls.' SJ Mem. at 25.) However, "[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact." *Lawtone-Bowles*, 2020 WL 2833366, at *5 (citing *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008)). In any event, it is premature for the Court to address whether Defendants' FLSA violations were willful since there has not been any determination that there have been any FLSA violations. Thus, I recommend that Plaintiffs' motion for summary judgment regarding willfulness be denied. *See Lawtone-Bowles*, 2020 WL 2833366, at *5 ("Because Plaintiffs' motion for summary judgment is denied on the underlying unpaid overtime violations, their motion for summary judgment on . . . willfulness is also denied.").

## VIII.   Defendants' Liability As Employers Under The FLSA And The NYLL

In their summary judgment motion, Plaintiffs appear to be arguing that Rojas is an "employer" of each of the Plaintiffs under the FLSA. (*See* Pls.' SJ Mem. at 25-27 (discussing factors articulated in *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).) They also argue that the various corporate defendants are employers as a single integrated enterprise

under the control of Rojas.[13] (*See id*. at 27-30 (discussing factors articulated in *Cook v. Arrowsmith Shelburne, Inc*., 69 F.3d 1235, 1240 (2d Cir. 1995).)

The inquiry whether an employer-employee relationship exists is "fact intensive." *See Coley v. Vannguard Urban Imp. Ass'n, Inc*., No. 12–CV–05565 (PKC), 2014 WL 4793825, at *3 (E.D.N.Y. Sept. 24, 2014) (citing *Barfield v. New York City Health & Hosps. Corp*., 537 F.3d 132, 143 (2d Cir. 2008)). With respect to Rojas's liability as an employer, Plaintiffs simply ignore the factual issues regarding which entity or entities employed each of the Plaintiffs and what control Rojas had over the particular entity or entities that are discussed in the Factual Background section above. In the portion of their memorandum addressing Rojas's liability as employer, Plaintiffs discuss Rojas's authority over employees of "La Abundancia," but fail to separately address each of the corporate Defendants in this case. (*See* Pls.' SJ Mem. at 25-27.) This is fatal to Plaintiffs' summary judgment motion on the issue of Rojas's liability since there are issues of fact regarding whether Rojas had authority over employees of certain of the corporate Defendants. For example, although Defendants admit that Rojas managed the restaurant owned by 63-12 Inc. (*see* Defs.' 56.1 Resp. ¶ 15), they have submitted evidence from which a reasonable factfinder could conclude that Rojas did not manage restaurants at other locations. (*See id*. ¶¶ 15, 24.) Defendants also have submitted evidence from which a reasonable factfinder could conclude that Rojas did not have authority over all the employees who worked at the restaurants operated under the "La Abundancia" trade name.  (*See id*. ¶¶ 18-19, 21.)

---

[13] Plaintiffs also assert that Defendants are employers under the NYLL since the definition of "employer" under the NYLL is similar to the definition of "employer" under the FLSA. (*See* Pls.' SJ Mem. at 30.)

With respect to the issue of whether all the restaurants that operated under the "La Abundancia" trade name were a single integrated employer, Defendants have submitted evidence from which it may be concluded that at least some of the restaurants were operated separately. For example, the parties agree that V. Rojas Corp. is owned by Valeria Rojas (Rojas's adult daughter) (*see* Pls.' 56.1 Resp. ¶ 15; Defs.' 56.1 Resp. ¶ 14), and Defendants have submitted evidence from which a reasonable factfinder could conclude that V. Rojas Corp. is not managed by the same individual who manages other Defendant restaurants. (*See* Defs.' 56.1 Resp. ¶ 28.) Furthermore, although Plaintiffs refer to testimony that employees were "interchangeable" between and among the Defendant restaurants (*see* Pls.' SJ Mem. at 29 (citing to Declarations from Plaintiffs)), Defendants refer to documents and testimony that Plaintiffs only were employed by certain Defendant restaurants, but not others. (*See* Defs.' 56.1 Resp. ¶¶ 34-35, 42, 50, 55.)

The Court's function in determining Plaintiffs' summary judgment motion is "material issue spotting[,] not material issue determining." *See King v. Shinder*, No. 16-CV-06315 (PMH), 2020 WL 4750294, at *5 (S.D.N.Y. Aug. 17, 2020). It is not incumbent on the Court to weigh the evidence or to comment on which side has the stronger case, and the Court declines to do so. Here, with respect to the issue of which of the Defendants were "employers" of which of the Plaintiffs, there are genuine issues of material fact that cannot be resolved on summary judgment and I recommend that Plaintiffs' motion for summary judgment on that issue be denied.

## DEFENDANTS' PARTIAL SUMMARY JUDGMENT MOTION

The Court addresses below each of the claims or issues as to which Defendants seek summary judgment.

I.   <u>**Minimum Wage Claims**</u>

Defendants seek summary judgment as to Plaintiffs' minimum wage claims. (Defs.' PMSJ Mem., ECF No. 246, at 3-4.) Plaintiffs admit that Mogollan, Perdomo and Villares were paid minimum wage. (*See* Pls.' 56.1 Resp. ¶¶ 34, 60, 62, 64, 69, 71, 73, 75, 77, 79; *see also* Pls.' PMSJ Opp. Mem., ECF No. 290, at 3 ("Plaintiffs never allege that the Plaintiffs were paid below minimum wage. Plaintiffs alleged that <u>Tipped Employees</u> [*i.e*., Mejia] were paid below the Minimum Wage at the tip-credit minimum wage, and that Defendants were not qualified to claim a tip credit allowance as to those Tipped Employees' wages, as Defendants have failed to satisfy the requirements under the [FLSA and NYLL]." (emphasis in original)).)

Thus, the only issue before the Court is whether Mejia and other tipped employees were paid the minimum wage, which depends upon whether Defendants properly took a tip credit allowance. As set forth above in Point II regarding Plaintiffs' summary judgment motion, there are genuine disputes that preclude summary judgment on this issue. In support of their effort to obtain summary judgment regarding the propriety of the tip credit allowance, Defendants filed with the Court a photograph of Mejia that appears to show certain notices on a wall in the restaurant. (*See* Photo, ECF No. 256-3.) However, one cannot discern the content of the notices from the photograph in order to assess what, if anything, they state regarding the tip credit allowance. In any event, as set forth above, Defendants have not proffered an acknowledgement of receipt by Mejia, or any other putative class member, of notice of the tip credit. (*See* Pls.' Summ. Judg. Mot., Point II, *supra*.) Thus, I recommend that Defendants' motion for partial summary judgment as to Mejia's minimum wage claim be denied, and that Mejia be granted partial summary judgment as to liability regarding her minimum wage claim under the NYLL.

## II.   <u>Overtime Claims</u>

Defendants seek summary judgment as to Plaintiffs' overtime claims, arguing that Plaintiffs cannot prove that they worked hours for which they were not compensated. (*See* Defs.' PMSJ Mem. at 4.) However, as set forth above in Points I and III regarding Plaintiffs' summary judgment motion, there are genuine disputes regarding the number of hours that Plaintiffs worked.[14] Thus, I recommend that Defendants' motion for partial summary judgement as to Plaintiffs' overtime claims be denied.

## III.   <u>Liquidated Damages Claims</u>

Defendants argue that they "always acted in good faith" and that liquidated damages should not be imposed against them. (Defs.' PMSJ Mem. at 7-8.) However, as set forth above in Point VI regarding Plaintiffs' summary judgment motion, there are genuine disputes regarding Defendants' good faith. Indeed, the fact that Defendants were previously sued regarding similar wage-related allegations (*see* Pls.' PMSJ Opp. Mem. at 14-15) is evidence that Defendants lacked the requisite subjective good faith. *See Lawtone-Bowles*, 2020 WL 2833366, at *5 (in denying Defendants' summary judgment motion as to liquidated damages, court noted as evidence of the lack of "requisite subjective good faith" that "Defendant has been sued several times before regarding nearly identical allegations").

---

[14] Defendants also argue that they had no knowledge of Plaintiffs' overtime work. (*See* Defs.' PMSJ Mem. at 4-7.) However, there are genuine disputes regarding what knowledge Defendants had regarding the hours worked by Plaintiffs. (*See* Pls.' PMSJ Opp. Mem. at 11-13 (citing, among other things, Rojas deposition testimony that employees not paid for time they clocked in and out).)

**IV.**     **FLSA Statute Of Limitations**

Defendants argue that a two-year statute of limitations should apply under the FLSA because their conduct was not willful. (*See* Defs.' PMSJ Mem. at 8-9.) However, as set forth above, there are genuine disputes regarding Defendants' willfulness. Again the fact of the prior wage-related lawsuits is evidence from which a trier of fact could conclude that Defendants conduct was willful. *See Lawtone-Bowles*, 2020 WL 2833366, at *5.

**V.**     **Ability Of Mejia And Perdomo To Prove Damages**

Defendants argue that Mejia cannot prove damages because the tip credit properly was applied to her and she did not work overtime and that Perdomo cannot prove damages because she did not work overtime. (Defs.' PMSJ Mem. at 9-10.) These arguments simply are retreads of the arguments addressed in Points I and II above regarding Defendants' partial summary judgment motion and the Court declines to address them further, except to note that Defendants' motion on these grounds is denied.

**VI.**     **Defendants' Argument That "Certain Of The Defendants Are Entitled To Summary Judgment With Respect To Certain Of The Plaintiffs"**

Defendants argue that "[e]ach Defendant is entitled to summary judgment with respect to claims filed by Plaintiffs who never worked for that Defendant." (Defs.' PMSJ Mem. at 10.) However, this argument ignores testimony by each of the Plaintiffs that they worked at the restaurants owned by other Defendants in addition to the restaurants at which they principally worked. (*See* Pls.' 56.1 Resp. ¶¶ 31-32; Defs.' 56.1 Resp. ¶¶ 35, 42, 50, 55.) Such testimony creates a genuine dispute of material fact as to which Plaintiffs worked for which Defendants that cannot be resolve in the context of a summary judgment motion. Thus, I recommend that Defendants' motion for partial summary judgment on this issue be denied.

### DEFENDANTS' MOTION FOR "DECERTIFICATION"

Defendants move to decertify the conditionally certified collective action under the FLSA. (*See* Defs.' PMSJ & Decert. Mot. at 4.) For the reasons set forth below, I recommend that Defendants' motion be denied.

### LEGAL STANDARDS

Section 216(b) of the FLSA authorizes employees to maintain collective actions where they are "similarly situated" with respect to the alleged violations. 29 U.S.C. § 216(b). Courts in the Second Circuit handle certification through a two-step process. The first step requires plaintiffs to make only "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citation omitted). "The second stage of collective active certification occurs after notice is sent [to the similarly situated employees], the opt-in period concludes, and discovery closes." *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 112 (S.D.N.Y. 2015). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id*. (citation omitted).

### APPLICATION

In support of their motion for "decertification," Defendants argue that Plaintiffs were not similarly situated with respect to their job duties and that Defendants did not operate as a single integrated enterprise. (Defs.' PMSJ Mem. at 12-14.) The Court finds that Plaintiffs have made a

persuasive showing that the original and opt-in Plaintiffs were common victims of a FLSA violation pursuant to a policy or practice and, thus, that they are similarly situated. *See Pefanis v. Westway Diner, Inc*., No. 08-CV-00002 (DLC), 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010). Moreover, the Court finds that Plaintiffs also have made a persuasive showing that the Defendant restaurants were operated as a single enterprise. *See Mogollan*, 2019 WL 5693375, at *6.

In any event, in the present case, "decertification" would not have any practical impact. After the Court authorized notices to be sent out to employees, only two employees who are not named in the Second Amended Complaint decided to opt in, *i.e.*, Perdomo and Villares.[15] Even assuming, arguendo, that this FLSA collective action were to be "decertified," Plaintiffs would be permitted to amend the Second Amended Complaint to add Perdomo and Villares as Plaintiffs given that there are issues of fact as to whether Defendants are liable to them. *See Williams v. Epic Sec. Corp*., 358 F. Supp. 3d 284, 294  (S.D.N.Y. 2019) (permitting amendment of pleading to add claims of opt-in plaintiffs after trial). Thus, I recommend that Defendants' motion for "decertification" be denied.

## PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION

Plaintiffs move to certify this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, with respect to their NYLL claims. (*See* Pls.' Class Cert Mot.) Plaintiffs seek to certify a class of "all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, counterpersons, cashiers and waiters, among others) employed by Defendants at all 'La Abunda[n]cia' restaurants in New York City, on

---

[15] As set forth below, I am recommending that the claims of Ibarra be dismissed for failure to prosecute.

or after April 12, 2012 to April 12, 2018." (Pls.' Proposed Class Cert. Order, ECF No. 224-1.)
Plaintiffs' Second Amended Complaint also seeks certification of a subclass of all tipped
employees, including, but not limited to, waiters, servers, and counterpersons ("Tipped
Subclass"). (SAC ¶ 30.)

> For the reasons set forth below, I recommend that Plaintiff's motion be granted.

## **LEGAL STANDARDS**

> A plaintiff may bring a civil action, pursuant to Rule 23 on behalf of a class "only if": "(1)
the class is so numerous that joinder of all members is impracticable; (2) there are questions of
law or fact common to the class; (3) the claims or defenses of the representative parties are
typical of the claims or defenses of the class; and (4) the representative parties will fairly and
adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4). In addition, "while Rule
23(a) does not expressly require that a class be definite in order to be certified, a requirement
that there be an identifiable class has been implied by the courts." *In re Methyl Tertiary Butyl
Ether ("MBTE") Prods. Liability Litig*., 209 F.R.D. 323, 336 (S.D.N.Y. 2002) (quoting *Zapka v. Coca-
Cola Co*., No. 99-CV-08238, 2000 WL 1644539, at *2 (N.D. Ill. Oct. 27, 2000)) (internal quotation
marks removed). This implied requirement, often referred to as "ascertainability," is met if the
members of the class can be ascertained by reference to objective, rather than subjective,
criteria. *See id*. at 337. Finally, under Rule 23(b)(3), which would govern the proposed class action
here, the court must find "that the questions of law or fact common to class members
predominate over any questions affecting only individual members, and that a class action is
superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.
R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "A party seeking class certification must affirmatively demonstrate his [or her] compliance with the Rule," and "be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. Class "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id*. at 350-51 (citation omitted).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers*, 624 F.3d at 547 (citations omitted). "In deciding a motion for class certification under Rule 23, 'the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (citation omitted).

<u>**APPLICATION**</u>

The Court addresses each of Rule 23's requirements in turn.

**I.**   <u>**Numerosity**</u>

"Rule 23(a)'s first requirement, numerosity, generally is presumed 'at a level of 40 members.'" *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 232 (S.D.N.Y. 2012) (quoting *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Based upon the payroll records that had been produced by Defendants and that were filed with the Court showing in excess of

40 workers (*see* Payroll Records, ECF Nos. 225-8 & 225-9), the Court finds that the numerosity requirement has been met.[16]

## II.  Commonality

Next, the court must find that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when "[t]he legal theory set forth in [the] [c]omplaint is common to all class members," such as where an "alleged failure to pay overtime violates New York's labor law," *Noble v. 93 Univ. Pl. Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004), or where an employer fails to pay spread of hours premiums or fails to provide wages statements. *See Flores v. Anjost Corp.*, 284 F.R.D. 112, 128 (S.D.N.Y. 2012). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-03765, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012); *see Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) ("[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.").

In the present case, Plaintiffs allege that "[a]ll the Class members were subject to the same corporate practices of Defendants of (i) failing to pay overtime compensation for hours worked in excess of forty (40) per workweek, (ii) failing to provide wage and hour notices at the date of hiring and annually as required by the NYLL and (iii) failing to provide wage statements as required by NYLL." (SAC ¶ 29.) With respect to the Tipped Subclass, Plaintiffs allege that they

---

[16] Defendants fail to challenge numerosity in their memorandum in opposition to Plaintiffs' class certification motion. (*See* Defs.' Class Cert. Opp. Mem., ECF No. 297.)

"were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL." (*Id*. ¶ 30.) Plaintiffs support their allegations with their own Declarations, as well as Defendants' payroll records and deposition testimony by Rojas and others. (*See*, *e.g.*, Mogollan Decl., ECF No. 231, ¶¶ 4, 7-12; Mejia Decl., ECF No. 232, ¶¶ 4, 7, 9-11, 13, 18, 29; Perdomo Decl., ECF No. 233, ¶¶ 4-5, 7-9; Villares Decl., ECF No. 234, ¶¶ 4, 7-10, 12-14; Payroll Records, ECF Nos. 225-4, 225-5 & 225-6; Rojas Dep. at 77-79, 88-89, 92-93, 104, 120-21; Barreto Dep. at 20-21.)

Defendants argue that their defenses to Plaintiffs' claims will require examination into each class members' "circumstances." (*See* Defs.' Class Cert. Opp. Mem. at 12-14.) However, even where "there are some differences among employees," such as "responsibilities, hours worked, and salaries," if "[a]ll potential class members are alleged to have been harmed by a common practice," for example, "defendants' failure to adequately compensate employees for overtime hours," the commonality requirement is met. *Noble*, 224 F.R.D. at 342; *see also Martinez v. Ayken, Inc.*, No. 13-CV-07411, 2016 WL 5107143, at *10 (E.D.N.Y. Feb. 29, 2016) ("When viewed as a whole, the deposition testimony, declarations and time/payroll records are sufficient proof to meet both the commonality and typicality requirements as they adequately establish that, at minimum, there is at least 'one issue common to all class members' that provides the 'unifying thread' which serves to bind the claims of the class members together.") (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008)).

III.   **Typicality**

Typicality is present when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). In a wage case, the typicality requirement is satisfied where the named plaintiff and proposed class members "were subject to the same general employment scheme," and their claims are based on "the same course of events and legal theory." *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (quotations omitted). Typicality is present even if there are factual differences among the claims if the named plaintiff alleges that defendants engaged in the same unlawful conduct toward them. *See Robidoux*, 987 F.2d at 937 ("[T]he typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (finding typicality requirement met despite differences among plaintiffs as to number of hours worked, type of work and amount of pay because those factors related to amount of damages not class certification requirements).

Based upon the Declarations submitted by Plaintiffs, the deposition testimony by Rojas and Defendants' payroll records, the Court is satisfied that Plaintiffs' claims are "typical of the claims" of the proposed class.  *See* Fed. R. Civ. P. 23(a)(3).

## IV.   Adequacy Of Representation

In seeking to defeat class certification, Defendants devote most of their argument to challenging whether the representative parties and their counsel will provide adequacy of representation to the proposed class. (*See* Defs.' Class Cert. Opp. Mem. at 4-11.) Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and

2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v.*

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Defendants contend that each of the named class members is inadequate[17] and that class

counsel is inadequate. (*See* Defs.' Class Cert. Opp. Mem. at 4-11.) The class representatives and

class counsel are discussed in turn below.

### A. Adequacy Of Class Representatives

#### 1. Mogollan

With respect to the purported inadequacy of Mogollan as a class representative,

Defendants argue two issues that go to the merits of this case. First, they argue that Mogollan

"cannot demonstrate that any Defendant ever refused to compensate him for overtime." (*Id*. at

8.) Second, they argue that Mogollan only was employed at 75-02 Corp. and never was employed

by any other Defendant restaurant. (*Id*.) As discussed in the portion of this Report and

Recommendation and Order recommending that Defendants' motion for partial summary

judgment be denied, these are both disputed issues.

A motion for class certification is not an opportunity for review of "the substantive merits

of plaintiffs' underlying claims." *See DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 476

(S.D.N.Y. 2005). "The only question" at class certification "is whether [plaintiffs] may pursue

those claims on behalf of a class of similarly situated persons, or whether they must do so as

individuals." *Id*. Thus, now is not the time to determine whether Mogollan will prevail on his

---

[17] In addition to addressing why the two Plaintiffs named in the Second Amended Complaint, *i.e.*, Mogollan and Mejia, purportedly are inadequate, Defendants also discuss Perdomo and Villares. (*See* Defs.' Class Cert. Opp. Mem. at 7-9.) However, Perdomo and Villares are opt-in Plaintiffs who are not named in the Second Amended Complaint. Thus, they are not class representatives. Accordingly, the Court does not address Perdomo and Villares as part of the adequacy of representation analysis.

overtime claims against all the Defendant restaurants. In any event, there is ample evidence in the record from which a factfinder could conclude that Mogollan was not paid overtime and that he worked at locations of other Defendant restaurants. Indeed, although Defendants characterize their failure to pay Mogollan overtime as having been due to an "accounting error," they admit that it occurred. (*See* Defs.' Class Cert. Opp. Mem. at 8.) The Court finds that Mogollan is an adequate class representative since it has not been shown that his interests are antagonistic to the interest of other members of the class. *See Baffa*, 222 F.3d at 60.

### 2. **Mejia**

Defendants first argue that Mejia is not an adequate class representative because her claims are barred by the FLSA two- or three-year statute of limitations. (Defs.' Class Cert. Opp. Mem. at 5-6.) However, Plaintiffs are seeking Rule 23 class certification on their NYLL claims where the statute of limitations is six years. *See* N.Y. Lab. Law § 198(3). Thus, Defendants' first argument for Mejia's inadequacy is baseless.

Defendants also raise the merits arguments that Mejia was paid the minimum wage (presumably due to Defendants' contentions that the tip credit properly was taken); that she is not owed any overtime; and that she was not employed by all the Defendant restaurants. (*See* Defs.' Class Cert. Opp. Mem. at 6-7.) The Court already has found as a matter of law that Defendants did not meet the requirements to take the tip credit under the NYLL. (*See* Pls.' Summ. Judg. Mot. Section, Point II, *supra*.) Further, as set forth above with respect to Mogollan, now is not the time to determine whether Mejia will prevail on her claims and/or the Defendants against whom she will prevail. The Court finds that Mejia also is an adequate class representative since

it has not been shown that her interests are antagonistic to the interest of other members of the class. *See Baffa*, 222 F.3d at 60.

### B. Adequacy Of Class Counsel

Rule 23(g)(1) provides: "Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Rule 23(g) directs that the Court consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id*. Defendants do not challenge that Plaintiffs' counsel's appointment under these criteria is appropriate. Moreover, based upon Plaintiffs 'counsel's experience in handling cases asserting claims under the NYLL (*see* Pls.' Class Cert. Mem., ECF No. 225, at 30 n.4), the Court finds that appointment of Plaintiffs' counsel is justified.

Defendants, however, challenge the appointment of Plaintiffs' counsel as class counsel based upon his conduct during depositions in this case. (Defs.' Class Cert. Opp. Mem. at 10-11.) The relevant conduct of Plaintiffs' counsel is discussed in the section of this Report and Recommendation that addresses Defendants' sanctions motion, *infra*. Suffice it to say that, on the record before the Court, the Court finds no basis *not* to appoint Plaintiffs' counsel as class counsel in this case, since the criteria of Rule 26(g) are met.

## V. Ascertainability

Plaintiffs assert, and Defendants do not contest, that a class is ascertainable because class members "can easily be identified based on Defendants' employment records." (Pls.' Class Cert. Mem. at 20.) The Court agrees.

**VI.**     **Rule 23(b) Requirements**

After satisfying the  Rule 23(a) prerequisites, the proposed class must qualify under one of the three categories set forth in Rule 23(b). Plaintiffs seek to certify the class under Rule 23(b)(3). (*See* Pls.' Class Cert. Mem. at 28-30.) Rule 23(b)(3) requires that "the court find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**A.**  **Predominance**

"Like the commonality inquiry, a court examining predominance must assess (1) the 'elements of the claims and defenses to be litigated'; and (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (quoting *McLaughlin on Class Actions* § 5:23). The Court finds that the predominance element is met here, notwithstanding individualized differences that may exist between and among class members. *See Mendez v. MCSS Rest. Corp.*, No. 16-CV-02746, 2019 WL 2504613, at *12 (E.D.N.Y. June 17, 2019) (Rule 23(b)(3) found satisfied where "Plaintiffs allege that all [c]lass [m]embers were systematically underpaid" due to the same policy and practice and they "provided testimony and time records corroborating these claims").

**B.  Superiority**

Plaintiffs also establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[18] "Courts in this Circuit . . . have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-CV-04116 (RWS), 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007). So too here, a class action is superior to individual actions being pursued.

Based upon all the foregoing, I recommend that a class be certified of all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, delivery persons, counterpersons, helpers and wait staff) employed by Defendants at all restaurants operating under the trade name "La Abundancia" in New York City during the period April 12, 2012 to April 12, 2018. I also recommend that a subclass be certified of all tipped employees, including, but not limited to, waiters, servers, and counterpersons.

**MOTIONS FOR SANCTIONS**

**LEGAL STANDARDS**

The parties' motions are for discovery-related sanctions and implicate Rule 30(d)(2) and 37(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and the Court's inherent powers.

---

[18] The rule lists four nonexclusive factors to be considered:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Rule 30(d)(2) states that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). To award sanctions under Rule 30(d)(2), the court must find the movant met his burden "of showing that the deposition was impeded, delayed or frustrated in any material sense." *Chawla v. Metropolitan Oral Surgery Associates, P.C.*, No. 11-CV-06248 (RRM) (VMS), 2014 WL 4678023 (E.D.N.Y. Sep. 19, 2014) (quoting *Severstal Wheeling Inc. v. WPN Corp.*, No. 10-CV-00954 (LTS) (GWG), 2012 WL 1982132, at *3 (S.D.N.Y. May 30, 2012)).

Rule 37(b) provides for sanctions for "failure to comply with a court order." *See* Fed. R. Civ. P. 37(b) (heading). Thus, unless a court order has been violated, sanctions may not be imposed under Rule 37(b). *See Fischer v. Verizon New York, Inc.*, No. 18-CV-11628 (RA) (OTW), 2020 WL 5117913, at *2 (S.D.N.Y. Aug. 31, 2020) ("Rule 37(b) allows for sanctions for failure to comply with a court order . . ..").

Title 28, United States Code, Section 1927, provides that: "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'" *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (citation omitted). "Like sanctions under § 1927, sanctions under the Court's inherent power require a finding of bad faith." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 220 (S.D.N.Y. 2003), *adhered to on reconsideration*, 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004). "[T]he only meaningful difference between an award made under § 1927

and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made

only against attorneys or other persons authorized to practice before the courts while an award

made under the court's inherent power may be made against an attorney, a party, or both."

*Oliveri v. Thompson*, 803 F.2d at 1273; *accord Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143-

44 (2d Cir. 2012).

"Whether a sanction should be imposed at all, and if so the form it should take, are

questions that are vested in the sound discretion of the district judge." *Bagley v. Yale Univ.*, 315

F.R.D. 131, 153 (D. Conn. 2016), *as amended* (June 15, 2016) (Haight J.).

## PLAINTIFFS' MOTION FOR SANCTIONS

### I.    Plaintiffs' Motion Under Rule 37(b)

Plaintiffs seek sanctions, pursuant to Rule 37(b)(2), due to "problematic discovery

practices," including difficulties that arose with Plaintiffs downloading documents produced by

Defendants through links that Defendants provided and Plaintiffs' purported failure to provide

Plaintiffs an opportunity to verify their transcripts. (*See* Pls.' Sanctions Mem., ECF No. 244, at 4-

7.) Plaintiffs never sought or obtained a court order regarding these issues. Since sanctions

cannot be imposed under Rule 37(b)(2), absent a court order, Plaintiffs' motion under this rule is

denied.[19]

---

[19] Plaintiffs suggest that Defendants violated the Court's Order of November 4, 2019 (ECF No. 149), which required Defendants to produce class discovery. (Pls.' Sanctions Reply, ECF No. 302, 2-3.) However, as Plaintiffs admit, Defendants did not refuse to produce the required documents, but sought to make the documents available via a link that purportedly did not work. (*See id.* at 3.) Plaintiffs failed to raise this issue with the Court or to seek a Court order regarding such issue. Even assuming, *arguendo*, that Defendants somehow were in violation of my November 4, 2019 Order, in my discretion, I do not find that an award of sanctions is appropriate.

II.     **Plaintiffs' Motion Under The Court's Inherent Power**

Plaintiffs seek sanctions based upon the Court's inherent power, arguing that Defendants and their former counsel, Albert Talero, improperly communicated with putative class members. (*See* Pls.' Sanctions Mem. at 7-8.) On February 20, 2020, Talero was relieved as counsel for Defendants. (*See* Consent Order, ECF No. 163.)

There is no ban on communications between parties and putative class members. *See Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012) (noting "Defendants' right to communicate directly with current and former employees who are potential class members regarding this litigation and its subject matter"); *see also Austen v. Catterton Partners V, LP*, 831 F. Supp. 2d 559, 565 (D. Conn. 2011) (referring to "*ex parte* communications between defense counsel and putative class members"). Plaintiffs note that restrictions may be placed on communications between defendants and putative class members. (*See* Pls.' Sanctions Reply at 10.) However, at the time that Defendants communicated with the putative class members in this case, there were no such restrictions in place and there currently are no such restrictions in place.

Plaintiffs' motion simply does not establish the requisite bad faith by Defendants or Talero needed to award sanctions. Thus, the Court, in its discretion, declines to award sanctions. Moreover, the Court finds that Plaintiffs' delay in seeking sanctions against Talero until long after Talero was relieved as counsel warrants denial of their motion under the equitable doctrine of laches. *See Franklin v. Krueger Int'l, Inc.*, 96-CV-02408 (DLC), 1997 WL 691424, at *5 (S.D.N.Y. Nov. 5, 1997) (denying sanctions based upon laches doctrine).

III.   **Plaintiffs' Motion Under Section 1927**

Plaintiffs seek sanctions under Section 1927 because the conference room at the offices of Enright Court Reporting Inc. where Defendants' counsel sought to hold Plaintiffs' depositions were not large enough to accommodate the social distancing needed due to the COVID-19 pandemic, and the depositions needed to be rescheduled. (Pls.' Sanctions Mem. at 8-9, 18-19.) Plaintiffs have not made a showing that Defendants' counsel acted in bad faith in choosing the offices at which to hold Plaintiffs' depositions and their motion under Section 1927 is denied.

<b>DEFENDANTS' MOTION FOR SANCTIONS</b>

Defendants seek sanctions against Plaintiffs' counsel for his misconduct during depositions he was defending, including making speaking objections and instructing witnesses not to answer questions. (*See* Defs.' Sanctions Mem., ECF No. 254, at 10-13; Defs.' Sanctions Reply, ECF No. 305, at 3-10.) The Court admonishes Plaintiffs' counsel for his conduct during the depositions. There were many improper speaking objections and instructions not to answer. However, the Court, in its discretion, declines to impose monetary sanctions. The Court finds that Plaintiff's counsel's conduct did not rise to the level of impeding or frustrating the examination sufficient to award monetary sanctions under Rule 30. *See Cordero v. City of New York*, No. 15-CV-03436 (JBW) (CLP), 2017 WL 2116699, at *6 (E.D.N.Y. May 12, 2017) (noting that courts in the Second Circuit "have declined to impose sanctions based solely on voluminous, unwarranted, and argumentative objections where opposing counsel was not prevented from completing the deposition"); *Severstal Wheeling Inc.*, 2012 WL 1982132, at *3 ("While the issue of sanctions is a close question given [counsel's] repeated use of objections that were not concise, courts have

40

normally awarded sanctions only for 'extreme conduct' during depositions." (citation omitted)).[20]

Sanctions under Rule 30(d)(2), however, are not limited to monetary sanctions. The rule authorizes the Court to impose an "appropriate sanction." Fed. R. Civ. P. 30(d)(2). The Court, in its discretion, finds that Plaintiffs' counsel's conduct resulted in Defendants' counsel not having ample time for the depositions of Perdomo and Villares. Thus, Defendants hereby are granted leave to take continued depositions of Perdomo and Villares for one hour each.

## IBARRA ORDER TO SHOW CAUSE

As noted above, on February 26, 2020, Ibarra had filed a consent to become a party plaintiff under the FLSA. (*See* 2/26/20 Consent, ECF No. 164.) On May 6, 2020, Defendants filed a notice to take her deposition. (5/6/20 Dep. Not., ECF No. 186.) On May 21, 2020, the Court granted Defendants' motion to take the deposition of Ibarra (among others) by remote means. (5/21/20 Order, ECF No. 190.) On May 22, 2020, Defendants filed a notice to take Ibarra's remote deposition. (5/22/20 Dep. Not., ECF No. 194.)

During a telephone conference with the parties held on May 26, 2020, Plaintiffs' counsel represented to the Court that he was unable to contact Ibarra in order to schedule her deposition. (*See* 5/26/20 Order, ECF No. 198.) Thus, in my May 26, 2020 Order, I stated that I would "recommend that the claims of opt-in Plaintiff Vasquez be deemed withdrawn unless she appears for a deposition prior to June 1, 2020 or unless she makes an application showing good cause for failure to appear, no later than June 8, 2020." (*See id*.) Thereafter, Ibarra failed to

---

[20] The Court, in its discretion, also declines to award sanctions against Plaintiffs' counsel due to his conduct at depositions under Section 1927 or the Court's inherent power because the Court does not find the requisite bad faith.

appear for her deposition and failed to make any application to the Court. (*See* 7/23/2020 OTSC at 1.)

On July 23, 2020, I entered an Order for Ibarra and/or her counsel to show cause, no later than August 17, 2020, why her claims should not be dismissed for failure to prosecute. (7/23/20 OTSC at 1-2.) The Order stated that her failure to show such cause "will result in a recommendation to the District Judge that her claims be dismissed without prejudice." (*Id*. at 2.) No papers were filed by Ibarra or her counsel in response to my aforesaid Order.

### LEGAL STANDARDS

Federal Rule of Civil Procedure 41(b) states that a defendant may move to dismiss an action or any claim against it "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). However, the Supreme Court has determined that the language of Rule 41 does not restrict the Court's power to act on its own and dismiss an action absent a motion. *See Link v. Wabash R. Co*., 370 U.S. 626, 630-31 (1962); *see also Harding v. Goode*, 135 F. App'x 488, 488 (2d Cir. 2005) ("Although not explicitly authorized by Rule 41(b), a court may dismiss a claim for failure to prosecute *sua sponte*.") (citation omitted). Unless the dismissal order states otherwise, a dismissal under Rule 41(b) "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

While "[d]istrict courts have discretion to effect dismissal pursuant to Rule 41(b)[,]" *Virola v. Entire GRVC Dep't of Mental Health Hygiene Servs*., No. 12-CV-01005 (ER), 2014 WL 793082, at *2 (S.D.N.Y. Feb. 21, 2014) (citing cases), "[t]he Second Circuit has cautioned . . . that [such discretion] should be exercised sparingly and only when the district judge is 'sure of the impotence of lesser sanctions.'" *Id*. (quoting *Chira v. Lockheed Aircraft Corp*., 634 F.2d 664, 665

(2d Cir. 1980)); *see also Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009). In considering whether to dismiss a case under Rule 41, courts consider five factors: (1) the duration of plaintiff's failure to comply with court orders; (2) notice to plaintiff that failure to comply would result in dismissal; (3) possible prejudice to defendants from further delay; (4) the balance between the interest of managing the court's docket and the plaintiff's right to be heard; and (5) consideration of lesser sanctions. *See Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193-94 (2d Cir. 1999). None of these factors is independently dispositive, and the Court reviews the dismissal in light of the record as a whole. *See Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

## APPLICATION

Viewing the record as a whole, the Court finds that dismissal of Ibarra's claims without prejudice is appropriate. As to the first factor, Plaintiff was ordered to appear for her deposition on May 21, 2020. The Second Circuit has held that failure to prosecute for a "matter of months" may be sufficient to warrant dismissal, *see Yadav v. Brookhaven Nat'l Lab.*, 487 F. App'x 671, 673 (2d Cir. 2012), and courts in this district consistently find that dismissal is justified based on delays of three to four months. *See Folk v. Barton*, No. 15-CV-06443, 2016 WL 8993874, at *2 (S.D.N.Y. Dec. 2, 2016) (granting motion to dismiss under Rule 41(b) based on plaintiff's failure to contact defendants or court for three months), *report and recommendation adopted*, 2017 WL 2191620 (S.D.N.Y. May 17, 2017); *Chavis v. City of New York*, No. 17-CV-09518, 2018 WL 6532865, at *3 (S.D.N.Y. Oct. 12, 2018) (four-month delay weighed in favor of dismissal), *report and recommendation adopted*, 2018 WL 6528238 (S.D.N.Y. Dec. 11, 2018).

Regarding the second factor, the Court gave Plaintiff notice that the Court might recommend dismissal. The third factor favors dismissal given the late stage of the proceedings.

The fourth factor favors dismissal because Plaintiff has had multiple opportunities to be heard by the Court, but has not appeared. *See Cayetano v. City of New York*, No. 13-CV-01861 (LAK) (JLC), 2013 WL 6097567, at *2 (S.D.N.Y. Nov. 20, 2013), *report and recommendation adopted*, 2015 WL 5514324 (S.D.N.Y. Sept. 17, 2015) (citing *Hibbert v. Apfel*, No. 99-CV-04246 (SAS), 2000 WL 977683, at *3 (S.D.N.Y. July 17, 2000) ("It is not the function of this Court to chase dilatory plaintiffs while other litigants in this district seek access to the courts.")).

Finally, the Court finds that the fifth factor weighs in favor of dismissal because no lesser sanction is feasible here. Thus, I recommend that Ibarra's claims be dismissed without prejudice for failure to prosecute.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that: (1) Plaintiffs' motion for summary judgment be GRANTED IN PART and DENIED IN PART and Plaintiff Mejia and the Tipped Class be granted partial summary judgment as to liability regarding their minimum wage claims under the NYLL; (2) Defendants' motion for summary judgment be DENIED; (3) Defendants' motion for decertification be DENIED; (4) Plaintiffs' motion for class certification be GRANTED; and (5) Plaintiff Ibarra's claims be dismissed without prejudice.

Further, I recommend that the following putative class be certified:

all non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, bussers, food runners, delivery persons, counterpersons, helpers and wait staff) employed by Defendants at all restaurants operating under the trade name "La Abundancia" in New York City during the period April 12, 2012 to April 12, 2018.

I also recommend that a subclass be certified of "all tipped employees, including, but not limited to, waiters, servers, and counterpersons." Finally, if my recommendations are adopted by the

Court, I recommend that the Court approve the form of notice filed at ECF No. 226-1, as modified to reflect my recommended subclass.

I hereby ORDER that Plaintiffs' motion for sanctions is DENIED and Defendants' motion for sanctions is GRANTED IN PART and DENIED IN PART. Defendants are granted leave to conduct continued depositions of Perdomo and Villares for one hour each, in the next 30 days.

DATED:      New York, New York
             September 30, 2020

                            STEWART D. AARON
                            United States Magistrate Judge

*        *        *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections (to those portions other than with respect to the motions for sanctions), pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).